[No. 11837-1-III. Division Three. May 18, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN MICHAEL GLEASON, *Appellant.*

14

*Paul J. Wasson,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Duane R. Knittle, Deputy,* for respondent.

*Katherine Steele Knox,* amicus curiae.

McINTURFF, J.* — John Michael Gleason appeals his conviction of one count of possession of cocaine and one count of possession of marijuana. He contends the trial court erred in refusing to suppress evidence seized from him after he was illegally stopped by police.

At the suppression hearing, Officer Strother testified that on April 25, 1991, he was on patrol with Officer Tovar, a rookie officer who was in training. They drove by a Yakima apartment complex commonly referred to as "the cabins". He said the cabins were occupied by low income Hispanics and were plagued by a high incidence of illegal narcotics transactions. According to the officer, when Caucasians were on the premises, they usually were there to buy narcotics.

*Judge J. Ben McInturff is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Officer Strother said he observed a white male, casually dressed in clean clothes, clean shaven, and with clean-cut hair, walk out of the apartment complex. He told Officer Tovar that the man would be a good individual for him to stop and identify and if he did not live or work in the complex, he should warn him of the drug loitering law. The man was later identified as Mr. Gleason.

The officers made a U-turn in their patrol car, parked it, and got out. Mr. Gleason continued to walk on with his back to the officers. According to Officer Tovar, he walked toward Mr. Gleason, and called out, "[C]an I talk to you a minute?" The officer then asked him why he was there and demanded identification. Mr. Gleason produced a driver's license from his wallet. When he did this, Officer Strother said he saw a neatly folded piece of green paper in the palm of his hand and immediately recognized it as a bindle containing cocaine. Officer Strother grabbed Mr. Gleason by his shirt, grabbed his hand, and pulled the bindle out.

At the suppression hearing, Mr. Gleason disputed the officers' testimony. He said the officer grabbed him by the shoulder, spun him around, and asked for identification. He testified he had his fist closed at his side and the officer kept asking what was in his fist. He finally opened his hand, believing the officers would get it anyway.

The trial court resolved conflicts in the testimony in favor of the officers and determined there was no seizure when the officers first contacted Mr. Gleason. The court concluded the seizure occurred when the officer saw the bindle and asked what it was, and at that point, they had a well-founded suspicion that Mr. Gleason was involved in criminal activity. The motion to suppress was denied.

After a stipulated trial, the court found Mr. Gleason guilty of one count of possession of cocaine and one count of possession of marijuana. He was sentenced to 152 hours of community service. This appeal followed.

The dispositive issue is whether the officers' approach and inquiries constituted a seizure violating Fourth Amendment

interests. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

Mr. Gleason contends the officers' first contact constituted an investigatory stop; that the facts do not support the trial court's finding of a reasonable, articulable suspicion of criminal behavior sufficient to justify the stop under *Terry*. He argues that the initial stop was based solely on his being a white male in a Hispanic neighborhood, and a person of any race being "out of place" in a particular area can never be used as a basis for suspecting criminal behavior. *State v. Barber*, 118 Wn.2d 335, 336, 823 P.2d 1068 (1992).

The State contends the initial contact by the officers amounted to a consensual encounter and neither probable cause nor a reasonable, articulable suspicion was required. *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990). The State argues that Mr. Gleason voluntarily conversed with the officers, consented to show his identification, and inadvertently exposed the bindle of cocaine.

■ Not all encounters between police officers and citizens are "seizures" of the person. *Mennegar*, at 309. For example, a police officer who, as part of his community caretaking function, approaches a citizen and asks questions limited to eliciting information necessary to perform that function has not "seized" the citizen. *Mennegar*, at 309. A "seizure" occurs when the circumstances surrounding the encounter demonstrate that a reasonable person would not feel free to disregard the officer and go about his business. *California v. Hodari D.*, 499 U.S. 621, 627-28, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991); *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980). *See also Mennegar*, at 310. We must therefore determine whether, under these circumstances, Mr. Gleason reasonably believed he was not free to go.

■ While the findings of the trial court following a suppression hearing are of great significance, the constitutional rights at issue require this court to undertake an independent evaluation of the record. *State v. Rowe*, 63 Wn. App. 750, 753, 822 P.2d 290 (1991).

Officer Strother testified he first observed Mr. Gleason when he was leaving the apartment complex, walking westbound from the parking lot toward Tenth Street. The patrol car was traveling south on Tenth. The officers made a U-turn and by the time they were proceeding north on Tenth, Mr. Gleason had proceeded out onto Tenth and was walking south. Officer Tovar pulled the car onto a side street, parked and got out. He walked toward Mr. Gleason who was by then walking southbound away from him and with his back to him. The officer called out "[C]an I talk to you a minute?" He then began walking toward Mr. Gleason as Officer Strother got out of the patrol car. Mr. Gleason turned around. He stopped when Officer Tovar was within arm's length in front of him. At that point, the officer asked him why he was there and demanded identification.

■ A person may be "seized" by a show of authority as well as by physical force. *Mendenhall*, at 554. Here, the testimony of the officers alone establishes that a seizure took place before Officer Strother saw the bindle of cocaine. A reasonable person in Mr. Gleason's position would have believed he was not free to disregard the officers and go about his business.

■ A seizure is justified if the officer can point to specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. *Terry*, at 21-22. *See also United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 101 S. Ct. 690, 695 (1981); *State v. Little*, 116 Wn.2d 488, 495, 806 P.2d 749 (1991). The reasonableness of an officer's suspicion is determined by the totality of the circumstances known to the officer at the inception of the stop. *Cortez*, at 417; *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). Racial incongruity, defined as a person of any race being allegedly "out of place" in a particular geographic area, is never a sufficient basis for forming a suspicion of criminal activity. *State v. Barber*, 118 Wn.2d 335, 347-48, 823 P.2d 1068 (1992).

18

Here, eliminating any consideration of racial incongruity, there were no facts to support a legally justified and well-founded suspicion of criminal activity at the time the arresting officers stopped and questioned Mr. Gleason. Racial incongruity aside, the trial court only found that Mr. Gleason, dressed in clean casual clothes, was seen leaving an apartment complex where narcotics had been sold in the past. As in *State v. Biegel*, 57 Wn. App. 192, 787 P.2d 577, *review denied*, 115 Wn.2d 1004 (1990), this was the first time the defendant had been seen in the area, the officers did not know what occurred inside the apartment and neither officer saw him involved in the purchase of drugs. *See also State v. Soto-Garcia*, 68 Wn. App. 20, 841 P.2d 1271 (1992). Further, there was no evidence Mr. Gleason was acting suspiciously, he was not carrying any unusual objects, and the officers admitted there was no basis to arrest him for loitering. The officers' suspicion of criminal activity was based solely on Mr. Gleason's presence at an apartment complex where the tenants were primarily Hispanic.

Since Mr. Gleason was unlawfully seized before he was searched, the trial court erred in failing to grant his motion to suppress.

The judgment of the Superior Court is reversed; this case is remanded to that court for dismissal.

THOMPSON, A.C.J., and SCHULTHEIS, J. Pro Tem., concur.