[No. 30293-1-I.   Division One.   July 26, 1993.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRY MILTON NETTLES, *Appellant.*

*Suzanne Lee Elliott* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *John L. Belatti, Deputy,* for respondent.

COLEMAN, J. — Terry Nettles appeals the trial court's denial of his motion to suppress evidence pursuant to CrR 3.6. Nettles argues that the trial court erred by admitting unlawfully seized evidence. We affirm.

On June 14, 1991, on her way to investigate reported narcotics activity at Rainier Avenue South and South Ferdinand Street, Seattle Police Officer Susan Wong passed Nettles and two other men at the corner of Rainier Avenue South and South Hudson Street. When the three saw Wong's car, they looked at each other and hurriedly began walking away. Nettles and one of the two others began walking south.

Wong found the intersection of Rainier and Ferdinand clear of people and narcotics activity and turned south again on Rainier. Wong testified that when she passed Nettles and

his companion a second time, they quickened their pace and repeatedly turned to stare at her car. Wong pulled over and parked on Hudson Street, exited her car, and called out to the two, "Gentlemen, I'd like to speak with you, could you come to my car?" Nettles turned around; the other man continued walking. Wong told Nettles to remove his hands from his pockets and come toward her car. She testified that as Nettles withdrew one hand from his pocket, he threw a plastic bag under her car which she suspected contained a controlled substance. The court found that Nettles "dropped" the baggie. Wong then ordered Nettles to place his hands on her patrol car and seized the baggie of suspected cocaine. Nettles was subsequently arrested and charged with unlawful possession of a controlled substance. Nettles agreed to a stipulated trial and moved to suppress the cocaine seized prior to his arrest. The trial court denied the motion and found Nettles guilty of the charge, imposing a standard range sentence of 2 months' confinement and 12 months' community supervision.

■ Police may generally retrieve voluntarily abandoned property without violating Fourth Amendment rights. *State v. Whitaker*, 58 Wn. App. 851, 853, 795 P.2d 182 (1990). Property is not voluntarily abandoned where the defendant shows (1) unlawful police conduct and (2) a causal nexus between the unlawful conduct and the abandonment. Property abandoned prior to a seizure is not the product of any illegal police conduct.[1] *Whitaker*, at 856.

In the present case, Officer Wong retrieved the cocaine dropped by Nettles after first asking if she could speak with

---

[1] In *Whitaker*, two uniformed police officers parked their marked police car at 12:30 a.m. in Garfield Park and exited the car and approached, with the aid of a flashlight, a group of people at a picnic table. As they neared the group, the defendant dropped a plastic bottle which was retrieved by the police and found to contain rock cocaine. The defendant argued but failed to show that prior to his abandonment of the cocaine the officers had illegally seized him. *Whitaker*, at 852. The court concluded that because the defendant had not been unlawfully stopped, he chose to drop the container of cocaine not as a result of police misconduct, but as a result of his own free will, and that the officers were free to pick up the voluntarily abandoned property. *Whitaker*, at 856.

him and then, when he returned to do so, asking him to remove his hands from his pockets. Thus, we first determine whether Nettles was seized prior to the discovery of the cocaine.

Both the fourth amendment to the United States Constitution and article 1, section 7 to the Washington Constitution prohibit unreasonable seizures of an individual. Evidence produced as the result of an unlawful seizure is not admissible against an accused. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 81 S. Ct. 1684, 84 A.L.R.2d 933 (1961).

■ Not every encounter between an officer and an individual amounts to a seizure. In Washington, a police officer has not seized an individual merely by approaching him in a public place and asking him questions, as long as the individual need not answer and may simply walk away. *State v. Richardson*, 64 Wn. App. 693, 696, 825 P.2d 754 (1992);[2] *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985);[3] *State v. Belanger*, 36 Wn. App. 818, 820, 677 P.2d 781 (1984).[4] However, once the officer restrains the indivi-

---

[2] In *Richardson*, a police officer saw two men walking in an area of Yakima known for its high drug activity. *Richardson*, at 694-95. The officer parked his patrol car beside the two men and asked if he could talk to them for a few minutes. The court held that this initial contact between the officer and the two men was a permissible encounter which did not intrude upon the defendant's constitutionally protected liberty or privacy. *Richardson*, at 696.

[3] In *Aranguren*, a police officer responding to a report of vandalism saw two individuals on bicycles leaving a parking lot about six blocks from the reported activity. *Aranguren*, at 454. The officer pulled over, exited his car, and asked whether he could talk to the two for a minute. *Aranguren*, at 454. He asked whether they had observed anything suspicious and whether they had any type of identification. *Aranguren*, at 454. Focusing on the noncoercive atmosphere of this initial encounter, the court held that asking to speak with the defendants and asking them to produce identification did not amount to a seizure. *Aranguren*, at 456.

[4] In *Belanger*, a police officer was patrolling an area in Aberdeen which had recently suffered a rash of pawn shop burglaries. He saw the defendant and another man known to the officer as a transient. The officer pulled over and called out to the transient to return. *Belanger*, at 819. The transient kept going and the officer did not stop him. Meanwhile, the defendant had remained where he was

dual's freedom to walk away, he has seized that person.[5] *Richardson*, at 696; *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982) (citing *Terry v. Ohio*, 392 U.S. 1, 16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Restraint amounting to a seizure occurs if, " 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " *Richardson*, at 696; (quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)); *see also State v. Mennegar*, 114 Wn.2d 304, 310-11, 787 P.2d 1347 (1990). In general, however, no seizure occurs when a police officer merely asks an individual whether he or she will answer questions or when the officer makes some further request that falls short of immobilizing the individual.[6]

---

and the officer proceeded to ask him about the rifles protruding from his duffel bag. The officer received permission to examine the rifles, which he discovered had been stolen. The court declined to find a seizure because the defendant voluntarily engaged in conversation with the officer and could have refused.

[5]In *Richardson*, a seizure arose only after the officer had the defendant empty his pockets and place his hands on the patrol car. In *Aranguren*, a seizure occurred only after the officer left the two men and took their identification with him to the patrol car. In *State v. Ellwood*, 52 Wn. App. 70, 757 P.2d 547 (1988), a police officer stopped his car and approached the defendant and his companion who were standing in an alley in a part of Everett with a history of burglaries and assaults. The officer asked the two men what they were doing in the area and asked them to state their names and dates of birth. *Ellwood*, at 71-72. The court held that this initial encounter did not amount to a seizure. Once he told them to " '[w]ait right here' ", however, the encounter matured into a seizure. *Ellwood*, at 73.

[6]Beyond mere questioning, asking a person to do something such as produce identification or an airline ticket does not necessarily convert an encounter into a seizure. *Florida v. Royer*, 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319 (1983); *Mendenhall*, at 555. Furthermore, in the interest of officer safety, directing an individual to merely remove his hands from his pockets has been held elsewhere to fall short of a seizure. *See, e.g., Duhart v. United States*, 589 A.2d 895, 898 (D.C. 1991) (in which officer approached defendant on street, asked him to take his hand out of his pocket, and, when defendant reluctantly complied, officer grabbed his hand; held: no seizure occurred until officer grabbed defendant's wrist; request that defendant remove hand from pocket constituted "merely a pre-seizure consensual encounter"); *United States v. Barnes*, 496 A.2d 1040, 1044-45 (D.C. 1985) (no seizure where officer asked defendant to remove hands from pockets and then asked him two questions, because this was no more intrusive than asking for identification).

■■ We now turn to an analysis of the facts of this case. Officer Wong did not approach Nettles and his companion with either siren or patrol lights. When exiting her car she did not draw her gun. She addressed Nettles and his companion in a normal voice when requesting to speak with them. Until Nettles voluntarily discarded a plastic baggie of cocaine, Wong made no attempt to stop Nettles' companion, who continued to walk away after she asked to speak with both men. This alone is a forceful indication that neither individual was required to or felt compelled by the circumstances to stop. Officer Wong made no attempt to immobilize Nettles — she did not request and retain his identification and she did not direct him to place his person in any particular location or position, such as hands on the patrol car, that would have implied a loss of freedom to a reasonable person. There is nothing to indicate that he could not have declined to speak to her or approach her car.

Second, although not dispositive, nothing in the record indicates that Nettles himself perceived the encounter as other than permissive in nature. Nettles had seen Officer Wong at least three times before she parked and approached him and his companion. He testified that Officer Wong was polite when she asked him to come over to her car to talk.

Q: She didn't say, get over to the car, did she?
A: No.
Q: Okay. She just asked you if you'd come over so that she could ask you some questions, isn't that right?
A: Something like that, yes.

Nettles stated that he did not feel threatened by Officer Wong, that he assumed she just wanted to talk, and that he did not think he was under arrest or that he was going to be arrested. When asked on redirect examination why he didn't just walk away, he replied, "I had no reason to."

Furthermore, the facts of this case are very similar to those of the initial encounters in *Richardson*, *Aranguren*, and *Belanger*, which also did not amount to seizures. The officers in all four cases were on foot, and the requests of each to speak with the respective defendants were all permissive in nature.

Like the officer in *Belanger*, Officer Wong made no attempt to stop Nettles' companion, who, like the defendant's companion in *Belanger*, declined to stop to answer any questions. Finally, Officer Wong's request that Nettles remove his hands from his pockets after he voluntarily returned to answer her questions was less intrusive and no more immobilizing than the request in *Aranguren* to examine the defendant's identification.

Moreover, in the interest of promoting public safety, the encounter between Nettles and Officer Wong should not be characterized as a seizure. As a part of their "community caretaking" function, police officers must be able to approach citizens and permissively inquire as to whether they will answer questions. In furtherance of this function, it is not unreasonable to permit a police officer in the course of an otherwise permissive encounter to ask an individual to make his hands visible, particularly under the circumstances of this case.[7] Such a request, by itself, does not immobilize an individual who has voluntarily agreed to speak with a police officer, does not produce property which an officer's possession of would immobilize the individual, and does not produce any incriminating evidence. Thus, the trial court properly concluded that the encounter between Officer Wong and Nettles never rose to the level of a seizure.[8]

---

[7] When asked why she asked Nettles to take his hands out of his pockets, Officer Wong testified:

"One, I'm responding to a narcotics call. Not necessarily these gentlemen are the suspects in that call, but to make a public contact with someone staring at me in intent stare with both hands in his pocket[s], I like to be officer — or conscious of my officer safety. And the way his hands were, the manner that he looked at me, the posture that he took, clued me in, and what I wanted Mr. Nettles to do was to take his hands out of his pocket[s] at that time."

[8] In *State v. Gleason*, 70 Wn. App. 13, 851 P.2d 731 (1993) (filed 1 day prior to oral argument in this case and cited as additional authority), a police officer approached the defendant and called out, " '[C]an I talk to you a minute?' " *Gleason*, at 15. When the defendant turned around, the officer asked him why he was in the area and demanded to see the defendant's identification. As the defendant produced his driver's license, the officer spotted a bindle of cocaine in the defendant's hand. The officer then grabbed the defendant by the shirt, grabbed his hand, and pulled out the bindle of cocaine. With very little discussion of the facts, and

Therefore, because Nettles' own actions resulted in the abandonment of the evidence prior to any seizure of his person, it was lawfully retrieved by Officer Wong and properly admitted against him.

The order of the trial court is affirmed.

WEBSTER, C.J., concurs.

BAKER, J. (dissenting) — I respectfully dissent.

The defendant was walking on a city sidewalk on an early summer evening. He had his hands in his pockets. A uniformed officer turned on her yellow wig-wag lights, stopped her patrol car near him, and asked him and his companion to step over to her car. The defendant turned toward her; his companion continued slowly walking away.

The officer had been responding to a radio dispatch to "check for narcotics activity" at a nearby intersection. Her suspicions were aroused because three men, including the defendant, split up and began walking when they saw her police car go by. It was her stated intent to stop the men and determine their identification and reason for being there.

The officer's tone was nonthreatening, but we indulge in impractical legal theorizing when we conclude that a reasonable person would feel free to ignore the officer's initial request to come over to her car to talk with her. The encounter continued, moreover, by the officer directing the defendant to remove his hands from his pockets. When he neither

---

without citing *State v. Richardson*, 64 Wn. App. 693, 696, 825 P.2d 754 (1992); *State v. Aranguren*, 42 Wn. App. 452, 455, 711 P.2d 1096 (1985); and *State v. Belanger*, 36 Wn. App. 818, 820, 677 P.2d 781 (1984), the court held that a seizure occurred prior to the police officer's spotting of the cocaine in the defendant's hand.

We do not necessarily believe, however, that the result reached in *Gleason* is inconsistent with the result reached here. The opinion emphasizes that there was a *demand* for identification. When police officers act in a demanding manner, an individual is less likely to feel free to leave or decline the demand. That situation must be contrasted with the situation here. It is clear from the record that the atmosphere was noncoercive and permissive in nature and would have appeared so to any reasonably objective person.

came toward the police car nor removed his hands from his pockets, the officer ordered him to "take your hands out of your pocket and come towards my car."

By this point, the encounter had progressively intruded upon the defendant's privacy to such an extent that a reasonable person would clearly not feel free to walk away. *State v. Soto-Garcia*, 68 Wn. App. 20, 841 P.2d 1271 (1992). In my opinion, to hold otherwise ignores the realities of the encounter. Worse, it promotes dubious policy. Had Nettles elected another course of action — for example, turning and running — the situation could have escalated into a chase through a residential neighborhood, with obvious attendant risks to innocent bystanders. We should encourage compliance with officer requests, including those borne of concern for officer safety. This is best accomplished not by straining to validate police stops which are effected on insufficient grounds, but by refusing to penalize those who do comply with the police officer's directions. If the stop lacks sufficient basis, we should not hesitate to exclude evidence so obtained.

Lawyers and judges will debate and disagree whether a seizure was effected under circumstances such as occurred in this case. It is unrealistic to expect citizens to make informed and intelligent decisions concerning the lawful authority of a police officer to issue directives like the one involved here. We should not encourage persons in the position of the defendant to choose not to comply and thereby possibly create risks for those involved as well as for the general public.[9]

I would hold that Nettles was illegally seized, *see, e.g., State v. Richardson*, 64 Wn. App. 693, 696, 825 P.2d 754 (1992), and that there was a nexus between that seizure and the dropping of the baggie.

Review denied at 123 Wn.2d 1010 (1994).

---

[9] See the interesting discussion of these issues in the opinion of Justice Scalia in *California v. Hodari D.*, 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547, 1551 (1991).