183 P.3d 352 (2008)
STATE of Washington, Respondent,
v.
Dustin Warren HARRINGTON, Appellant.
No. 25497-6-III.
Court of Appeals of Washington, Division 3.
May 13, 2008.
Susan Marie Gasch, Gasch Law Office, Spokane, WA, for Appellant.
Adrienne Michelle Farabee, Benton County Prosecutors Office, Kennewick, WA, for Respondent.
KORSMO, J.
¶ 1 Dustin Harrington appeals his conviction for possession of methamphetamine discovered during a pat down of his pockets. The trial court found that Mr. Harrington's meeting with Officer Scott Reiber was a consensual encounter. The arrival of an additional officer did not convert the situation into a seizure. Accordingly, we affirm the conviction.
¶ 2 Officer Reiber, while on patrol in Richland, saw Mr. Harrington walking at 11:00 p.m. and decided to talk to him. He turned his patrol car around and parked in a driveway ahead of Harrington. He then got out of his car and, standing away from the sidewalk, asked to speak with Mr. Harrington. *353 Harrington agreed to talk and Reiber advised him that he was not under arrest.
¶ 3 The officer asked Mr. Harrington what he was doing; he also noted several objects were in Harrington's pockets. Told that Harrington had just visited his sister, the officer asked where she lived. Mr. Harrington replied that he did not know where she lived. The officer became suspicious.
¶ 4 During the conversation, Trooper William Bryan drove by and decided to stop. He parked on the street and walked up to where the two men were talking. Neither participant acknowledged the trooper's presence; Bryan did not involve himself in the conversation.
¶ 5 Mr. Harrington was nervous and kept putting his hands in his pockets despite the officer's request that he not do so. Eventually Officer Reiber asked if he could check Mr. Harrington's pockets. Harrington agreed. A pat down of the outside of the pocket revealed a hard cylindrical object. When asked what it was, Mr. Harrington candidly told the officer it was a "meth pipe." Officer Reiber told Mr. Harrington he was now under arrest. Harrington fled but was apprehended by the two officers a short distance away.
¶ 6 A search incident to the arrest revealed a small amount of methamphetamine in the pipe. Mr. Harrington moved to suppress, contending that he had been seized when the officer approached him. The trial court disagreed, finding that there was a consensual meeting and that defendant's actions in repeatedly putting his hands in the pockets justified a pat down for officer safety. After his motion to suppress the evidence was denied, Mr. Harrington was found guilty during a stipulated facts trial. He then appealed to this court.
¶ 7 A seizure occurs when a person's movements have been restrained to the extent that a reasonable person would believe he was not free to walk away from an officer. United States v. Mendenhall, 446 U.S. 544, 553-554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); State v. Mennegar, 114 Wash.2d 304, 310, 787 P.2d 1347 (1990), overruled in part by State v. Hill, 123 Wash.2d 641, 645, 870 P.2d 313 (1994). The record supports the trial court's determination that the encounter between Mr. Harrington and Officer Reiber was not a seizure. Officer Reiber parked his car out of the way and did not impede Mr. Harrington's ability to use the sidewalk. The officer asked if Harrington would talk with him. There was simply no show of authority that would support a finding that Mr. Harrington was seized.
¶ 8 The appearance of Trooper Bryan at the scene did not change the assessment. The trooper stood a respectful distance away without becoming part of the encounter. His presence did not seize Mr. Harrington. Law enforcement officers routinely back each other up. An additional officer, arriving without a show of force, simply does not change the nature of the original encounter.
¶ 9 Appellant also contends that the request to check the pockets constituted a seizure, citing to State v. Soto-Garcia, 68 Wash.App. 20, 841 P.2d 1271 (1992), abrogated in part by State v. Thorn, 129 Wash.2d 347, 917 P.2d 108 (1996).[1] There an officer had contacted Mr. Soto-Garcia walking from the "little Tijuana" section of Kelso known for cocaine dealing. After learning his name, the officer ran a warrants check in his presence. When that came back negative, the officer asked Mr. Soto-Garcia whether he had any cocaine. After receiving a negative response, the officer asked and received permission to search. The search revealed cocaine. Id. at 22, 841 P.2d 1271. The trial court found that under these facts the officer had seized Soto-Garcia by asking to conduct the search. Id. at 23, 841 P.2d 1271. Division Two of this court agreed, finding that the Fourth Amendment standard for seizure had been established under this combination of facts. Id. at 25, 841 P.2d 1271. It then ruled that the consent to search was invalid due to the improper seizure. Id. at 26-28, 841 P.2d 1271.
*354 ¶ 10 The facts of this case do not rise to the level of Soto-Garcia. There the combination of the records check, the inquiry about illegal drug possession, and the request to search constituted a seizure. In contrast, this was a consensual encounter not marred by inquiries concerning warrant status and illegal activity. Rather, the encounter was more like that in State v. Thorn, 129 Wash.2d 347, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003). There an officer, after observing suspicious behavior, walked up to a parked car and asked, "Where is the pipe?" Id. at 349, 917 P.2d 108. The trial court had found the question constituted a seizure and suppressed the controlled substances found during a subsequent arrest and search. Id. at 350, 917 P.2d 108. The Washington Supreme Court reversed, concluding that the totality of the circumstances did not show a seizure had occurred when the officer asked the question about the pipe. Id. at 353-354, 917 P.2d 108.
¶ 11 Similarly here, asking for consent to search did not turn a voluntary meeting into a seizure. Appellant's position, if accepted, would essentially vitiate any consent to search where probable cause to search did not already exist. Such is not the state of the law.
¶ 12 The appellant's repeated placing of his hands in the object-laden pockets, after repeated requests not to do so, also justified the pat down independent of the consent. See City of Seattle v. Hall, 60 Wash.App. 645, 806 P.2d 1246 (1991) (officer could pat down person engaged in voluntary conversation who was "antsy" and caused legitimate concern for officer safety).
¶ 13 The trial court correctly determined that no seizure took place.
¶ 14 Accordingly, the conviction is affirmed.
I CONCUR: BROWN, J.
SWEENEY, J. (dissenting).
¶ 15 This police encounter was not a "social contact" and Dustin Harrington was not free to just walk away. And so I respectfully dissent.
¶ 16 Mr. Harrington was confronted by two uniformed officers and two squad cars, at eleven o'clock at night. The state trooper stopped to provide "backup." The police officer ordered Mr. Harrington to remove his hands from his pockets and then asked whether he could search him. The court concluded, nonetheless, that this contact was a "social contact." Clerk's Papers (CP) at 19 (Conclusion of Law 1). But there is no suggestion that the officer knew Mr. Harrington, that Mr. Harrington needed help, or that the officer was looking for someone on the street at eleven o'clock at night to visit with. And moreover, any suggestion that this was a "social contact" evaporated when the state trooper showed up and stood nearby, or when the officer ordered Mr. Harrington not to put his hands in his pockets.
¶ 17 Mr. Harrington was not in a high crime area. State v. Miller, 91 Wash.App. 181, 183, 955 P.2d 810, 961 P.2d 973 (1998). There was no suspicion (reasonable or otherwise) of criminal activity in or around the area where Mr. Harrington was seized. State v. Armenta, 134 Wash.2d 1, 8, 948 P.2d 1280 (1997); State v. Hopkins, 128 Wash. App. 855, 867, 117 P.3d 377 (2005). Mr. Harrington was not and did not appear to be sick, injured, disabled, drunk, or lost. State v. Acrey, 110 Wash.App. 769, 773, 45 P.3d 553 (2002), aff'd, 148 Wash.2d 738, 64 P.3d 594 (2003). In short, there was no legally supportable reason for this encounter/stop/confrontation/seizure and labeling it a "social contact" does not change the reality. There simply was no reason to contact Mr. Harrington.
¶ 18 We do a disservice to the public and to police by moving the so-called "social contact" into just another form of seizure, albeit without any cause or suspicion of crime or danger to the public or the police. Backup is certainly an important police safety procedure for any investigation. But this was, according to the court, not an investigation, it was a "social contact." The trooper says he may or may not have had his emergency lights on.
¶ 19 I would conclude that this stop by a police officer, along with the presence of *355 backup by a state trooper and the presence of two marked police cars at this time of night, put Mr. Harrington in a position that he was not free to simply walk away.
¶ 20 The court's conclusion that Mr. Harrington's conduct was "suspicious, and supported Officer [Scott] Reiber continuing the contact" (Conclusion of Law 2) flies in the face of the court's conclusion that all of this amounted to a "social contact" (Conclusion of Law 1). CP at 19. Fidgety and nervous is an understandable reaction given the encounter here.
¶ 21 A social contact should be just that  a social contact  not an opportunity for police to investigate, provoke, or "find" criminal activity. This may have started as a casual encounter but it escalated into something more, without probable cause or even a reasonable suspicion that Mr. Harrington had done anything wrong.
¶ 22 I intend no criticism of the police work here. Indeed, it may well have been good police work. I conclude simply that there was not adequate constitutional sanction for the conduct here, and the evidence should then have been suppressed. Our holding in State v. Soto-Garcia is on point. State v. Soto-Garcia, 68 Wash.App. 20, 841 P.2d 1271 (1992), abrogated on other grounds by State v. Thorn, 129 Wash.2d 347, 917 P.2d 108 (1996).
¶ 23 I have read State v. Nettles and respectfully disagree with the conclusion the majority of the court reaches there. State v. Nettles, 70 Wash.App. 706, 712, 855 P.2d 699 (1993). There, the court concluded that orders from an armed policeman to remove one's hands from one's pockets was not a sufficient showing of authority to convert a social contact into a seizure. That aside, the police contact in Nettles was at least prompted by reports of and a request to investigate drug activity in the area where police found Mr. Nettles. Id. at 707-08, 855 P.2d 699.
¶ 24 State v. Thorn is also distinguishable. State v. Thorn, 129 Wash.2d 347, 917 P.2d 108 (1996), overruled on other grounds by State v. O'Neill, 148 Wash.2d 564, 62 P.3d 489 (2003). There, the court concluded that the question, "where is the pipe," did not constitute a seizure because it was capable of more than one interpretation. Id. at 354, 917 P.2d 108. But the court was clear: "Our holding should not be construed as a blanket rule that an officer does not seize a person merely by asking a question." Id.
¶ 25 Here, two police officers, two patrol cars, late at night, orders to remove his hands from his pockets, and finally a request to search over the course of up to five minutes does not add up to a conclusion that a reasonable person would have felt free to just walk off. Mr. Harrington was not free to just walk off. There was a sufficient show of authority that no citizen would have felt free to just walk away from the police officers.
NOTES
[1] Asking a person engaged in a voluntary encounter with an officer to keep his hands out of his pockets and in plain sight also does not constitute a seizure. State v. Nettles, 70 Wash. App. 706, 712, 855 P.2d 699 (1993), review denied 123 Wash.2d 1010, 869 P.2d 1085 (1994).