FILED
COURT OF APPEALS
DIVISION II

2013 JUL -9 AM 9:09

STATE OF WASHINGTON

BY_____
       DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42106-2-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| J.C-M., | |
| Appellant. | |

BJORGEN, J.– J.C-M.[1] appeals his juvenile adjudications for being a minor in a public place while exhibiting the effects of having consumed liquor, contrary to RCW 66.44.270(2)(b), and unlawful possession of a dangerous weapon contrary to RCW 9.41.250. J.C-M. asserts that the trial court erred by denying his motion to suppress evidence and that substantial evidence did not support his adjudications. Although the trial court erred by failing to enter written findings of fact and conclusions of law as required under CrR 3.6(b) and JuCR 7.11(d), the error was harmless because the trial court's oral rulings are sufficient to facilitate our review of the issues presented. We affirm J.C-M.'s juvenile adjudications.

---

[1] Under RAP 3.4, we change the title of the case to the juvenile's initials to protect the juvenile's interest in privacy.

FACTS

On July 31, 2010, Longview Police Officer Brian Durbin was looking for the subject of an arrest warrant described as a smaller adult male with dark hair that appeared to be a juvenile. At approximately 10:30 p.m. that same evening, Durbin was driving in his patrol vehicle when he saw three individuals walking down the street that appeared to be juveniles, one of whom matched the description of the arrest warrant suspect. Durbin approached the three individuals in his vehicle but did not activate his sirens or lights. As Durbin was coming to a stop in front of the individuals, he rolled down his passenger side window and said, "Stop." Report of Proceedings (RP) at 20.

According to Durbin, he asked only the person matching the warrant suspect's description to stop so that he could identify him, but that all three individuals stopped after his command. Durbin stated that he "did not yell out specifically, 'Smaller male, stop.'" RP at 22. When Durbin pulled his vehicle forward in front of the three individuals, he looked in the mirror and saw J.C-M. "throw an object away from him in a furtive movement." RP at 18. When Durbin contacted him, J.C-M. stumbled and "almost tripped over his feet coming to the car." RP at 46. Durbin told J.C-M. to put his hands on the trunk of his patrol vehicle and then asked J.C-M. what he had thrown, to which J.C-M. responded, "'A knife.'" RP at 42. Shortly thereafter, Durbin retrieved the double-bladed knife that J.C-M. had thrown and placed him under arrest. As Durbin searched J.C-M., he detected a strong odor of alcohol on J.C-M.'s breath. The State charged J.C-M. with being a minor in a public place exhibiting the effects of liquor and unlawful possession of a dangerous weapon.

No. 42106-2-II

J.C-M. filed a motion to suppress any evidence obtained during Durbin's contact with him, asserting that the stop and search of his person was unreasonable. Following a CrR 3.6 hearing, the trial court orally ruled:

> Okay. Just the intrusion—the intrusion by the police officer is this: He pulls next to three pedestrians, one of whom he thinks may be wanted, apparently had been described, and even in a briefing that night, and says, "Stop." That's it. Is it inappropriate for a patrol officer to order someone to stop if he thinks they match the description of someone they are looking for on an outstanding warrant, or apparently they had had the briefing that night, so it's someone they are looking for currently? That does not strike me as offensive. The alternative is—this is the alternative: The officer says, "I have a warrant. That may be the person I am looking for right there. I can't do anything about it. I can't even ask them to—I can't even tell them to stop and identify themselves." I think that is an unreasonable consequence. I think what happened here—the officer says I am looking for someone matching—there is a warrant outstanding. I met a group late at night. This person seems to match the description. I asked them to stop for a 30-second intrusion. I don't think that is unreasonable.
>     And he sees the Defendant, before he even actually contacts the Defendant, make some furtive gestures. I think he is entitled to follow up with that.
>     So, I am going to deny the motion to suppress, except with regard to the statements. Apparently he was under arrest when he asked him about whether he had been drinking?

RP at 30-31. The trial court did not issue written findings of fact or conclusions of law.

At the conclusion of trial, the trial court issued an oral ruling adjudicating J.C-M. guilty of the State's charges, stating:

> The weapon here is a knife, an unusual weapon. It is an unusual shape. It has two fairly long blades for a knife. Probably four or five inches long, each blade. The blades seem to be fixed in the handle. They face each other, and there is about a three-inch, or two, two- or three-inch opening between each blade as they face each other. For it to be effective as a weapon, something has to fit between the two blades.
>     It certainly has a menacing appearance. In reality, it is probably not very effective as a knife because it—each blade acts as a guard towards the other, but it has the potential to harm someone. I can't see that it has any purpose as a utility knife. It doesn't have any purpose as a utility knife. I can't think of any circumstances under which it would be used to cut vegetables, or anything else.

3

Its real—its real use is to intimidate, and it has the ability to do that, and is, I suppose, potentially dangerous in that—that use.

With regard to whether it is carried furtively, the testimony of the officer is that the Defendant furtively got rid of it. It could not be seen, being carried, when the officer saw him.

"Furtively carries a dangerous weapon." That is this violation. Furtively carries a dangerous weapon. The fact that the officer could not see it and the Defendant attempted to get rid of it furtively when contacted by the officer, I think, establishes that the Defendant furtively carried a dangerous weapon.

So, while the facts are somewhat unusual, I think they are established beyond a reasonable doubt.

With regard to the appearing in possession in public, [RCW] 66.44.270, the statute says, "For the purpose of this subsection, exhibiting the effects of having consumed liquor means that a person has the odor of liquor on his breath," which is—it does not seem to be denied. And, "Exhibits the effects by lack of coordination." I think, you know, the officer says he had the odor of intoxicants on his breath, and he was—he exhibited the effects by lack of coordination. I think he said that.

RP at 57-59. The trial court did not enter written findings of fact or conclusions of law. J.C-M. timely appeals his juvenile adjudications.

ANALYSIS

I. CrR 3.6 MOTION TO SUPPRESS EVIDENCE

J.C-M. first contends that the trial court erred by denying his CrR 3.6 suppression motion because the evidence at issue was seized following an illegal detention. We disagree for the following reasons.

The Fourth Amendment to the United States Constitution and article I, section 7 of our state constitution protect individuals against unreasonable searches and seizures. *State v. Day*, 161 Wn.2d 889, 893, 168 P.3d 1265 (2007). A warrantless seizure is presumed unreasonable under the Fourth Amendment. *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). The presumption of unreasonableness may be rebutted by a showing that one of the few "'jealously and carefully drawn exceptions to the warrant requirement'" applies. *Houser*, 95 Wn.2d at 149

4

No. 42106-2-II

(quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991)). The State bears the burden of showing a warrantless seizure falls within one of the exceptions to the warrant requirement. *State v. Kinzy*, 141 Wn.2d 373, 384, 5 P.3d 668 (2000).

One exception to the warrant requirement allowing an officer to detain an individual is when the officer has probable cause to believe that the individual has committed a crime. *See e.g., Dunaway v. New York*, 442 U.S. 200, 207-09, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); *State v. King*, 89 Wn. App. 612, 618, 949 P.2d 856 (1998). Another narrower exception is an investigative *Terry* stop, based upon less evidence than is needed for probable cause to make an arrest, which permits the police to briefly seize an individual for questioning based on specific and articulable objective facts that give rise to a reasonable suspicion that the individual has been or is about to be involved in a crime. *King*, 89 Wn. App. at 618 (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).

Although a *Terry* stop is a brief seizure of an individual that may be permitted upon a reasonable suspicion of criminal activity, "[n]ot every encounter between an officer and an individual amounts to a seizure." *State v. Nettles*, 70 Wn. App. 706, 709, 855 P.2d 699 (1993). In determining whether a seizure has occurred, the essential inquiry is whether in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave, or free to otherwise decline an officer's request. *State v. O'Neill*, 148 Wn.2d 564, 574, 62 P.3d 489 (2003); *State v. Armenta*, 134 Wn.2d 1, 10-11, 948 P.2d 1280 (1997). "Whether a seizure *occurs* does not turn upon the officer's suspicions," rather, "[w]hether a

5

person has been restrained by a police officer must be determined based upon the interaction between the person and the officer." *O'Neill*, 148 Wn.2d at 575. The defendant bears the burden of proving that a seizure occurred. *O'Neill*, 148 Wn.2d at 574. "In general . . . no seizure occurs when a police officer merely asks an individual whether they will answer questions or when the officer makes some further request that falls short of immobilizing the individual." *Nettles*, 70 Wn. App. at 710. In determining whether a seizure occurred in violation of article I, section 7 of our state constitution, we apply a purely objective standard "'looking to the actions of the law enforcement officer.'" *O'Neill*, 148 Wn.2d at 574 (quoting *State v. Young*, 135 Wn.2d 498, 501, 957 P.2d 681 (1998)).

When reviewing the trial court's denial of a CrR 3.6 suppression motion, our task is to determine whether substantial evidence supports the trial court's factual findings and whether those findings support its conclusions of law. *State v. Bliss*, 153 Wn. App. 197, 203, 222 P.3d 107 (2009). To facilitate our review, the trial court is required to enter written findings of fact and conclusions of law at the conclusion of a suppression hearing. CrR 3.6(b); *see also State v. Head*, 136 Wn.2d 619, 622-23, 964 P.2d 1187 (1998) (entry of written findings and conclusions is necessary for a meaningful review); *State v. Cruz*, 88 Wn. App. 905, 909, 946 P.2d 1229 (1997) (stressing consistent and firm enforcement of CrR 3.6). Although we may overlook the absence of written findings and conclusions, we will only do so where the trial court clearly and comprehensively states in its oral opinion the basis of its decision. *Cruz*, 88 Wn. App. at 907-08; *State v. Radka*, 120 Wn. App. 43, 47-48, 83 P.3d 1038 (2004).

Here, the trial court's oral ruling indicated that Durbin pulled his vehicle next to three pedestrians, one of whom matched the description of a warrant suspect, and said, "Stop." Then,

all three pedestrians stopped and, very quickly, before Durbin could make further contact with any of the pedestrians, J.C-M. made the furtive gesture. This oral ruling is sufficient to facilitate our review of the trial court's suppression ruling.

The trial court's oral ruling indicated that one of the pedestrians matched the description of a warrant suspect and, thus, the officer had a reasonable suspicion sufficient to initiate a *Terry* stop with regard to that individual. To effectuate the valid *Terry* stop, the officer stated, "Stop," in the direction of the three pedestrians. Then, before the officer could approach the subject of his command to stop or could clarify that his command was only directed at one of the pedestrians, J.C-M. made a furtive gesture giving the officer adequate reasons to question him about that gesture. Under the specific circumstances here, we hold that J.C-M. failed to meet his burden that he had been impermissibly seized upon the officer's initial statement, "Stop." Rather, J.C-M.'s seizure did not occur until after the officer contacted him following his furtive gesture, which gave rise to an articulable suspicion sufficient to warrant a *Terry* stop. *See e.g.,* *State v. Larson*, 88 Wn. App. 849, 856, 946 P.2d 1212 (1997).

## II. SUFFICIENCY OF THE EVIDENCE

Next, J.C-M. contends that sufficient evidence did not support his adjudications because (1) there was no evidence that he was the person that Durbin claimed committed the charged offenses and (2) there was no evidence that he furtively carried a dangerous weapon with intent to conceal. We disagree and hold that sufficient evidence supports J.C-M.'s adjudications.

Sufficient evidence exists to support an adjudication of guilt in a juvenile proceeding if any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt when viewing the evidence in the light most favorable to the State. *State v. Green*, 94 Wn.2d

216, 221-22, 616 P.2d 628 (1980). A defendant claiming insufficiency of the evidence admits the truth of the State's evidence and all inferences that reasonably can be drawn from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Following a juvenile adjudication hearing, "the court is required to state its findings including the evidence relied upon and enter its decision, JuCR 7.11(c), and to reduce them to writing if the case is appealed, JuCR 7.11(d)." *State v. Echeverria*, 85 Wn. App. 777, 782-83, 934 P.2d 1214 (1997). If the written findings do not state the ultimate facts on each element of the offense, and there is no evidence in the record to support the omitted findings, reversing and dismissing the charge are warranted. *State v. Alvarez*, 128 Wn.2d 1, 19, 904 P.2d 754 (1995). However, if the trial court failed to enter written findings on the ultimate facts, but sufficient evidence in the record establishes that the State met its burden of proof, the case may be remanded for revision of the findings. *Alvarez*, 128 Wn.2d at 19. Moreover, if the juvenile court entered a comprehensive oral ruling that includes findings on all the essential elements, the court's noncompliance with JuCR 7.11(d) is inconsequential, and remand is not necessary. *State v. Bynum*, 76 Wn. App. 262, 266, 884 P.2d 10 (1994). We hold that the juvenile court's extensive oral ruling here sufficiently includes findings on all the essential elements and, thus, remand for entry of written findings and conclusions are unnecessary.

To adjudicate J.C-M. guilty of being a minor in a public place while exhibiting the effects of having consumed liquor as charged under RCW 66.44.270(2)(b), the State had to prove beyond a reasonable doubt that he was (1) under 21 years of age, (2) in a public place, and (3) exhibited the effects of having consumed liquor. RCW 66.44.270(2)(b); JuCR 7.11(a). To prove that J.C-M. exhibited the effects of having consumed liquor, the State had to show beyond a reasonable doubt that he had the odor of liquor on his breath and either (1) was "in possession of or close proximity to a container that has or recently had liquor in it," or (2) "by speech, manner, appearance, behavior, lack of coordination, or otherwise, exhibit[ed] that he [was] under the influence of liquor. RCW 66.44.270(2)(b). Further, to adjudicate J.C-M. guilty of unlawful possession of a dangerous weapon as charged under RCW 9.41.250(1)(b), the State had to prove beyond a reasonable doubt that he (1) furtively carried (2) with intent to conceal (3) any dagger, dirk, pistol, or other dangerous weapon. RCW 9.41.250(1)(b); JuCR 7.11(a).

J.C-M. first argues that sufficient evidence did not support his adjudications because the State did not present any evidence that he was the person Officer Durbin claimed committed the charged offenses. Specifically, J.C-M. asserts, "At no point during the officer's testimony did the [S]tate or the defense have the officer identify the defendant in the courtroom as the person he was referring to as the person he encountered and arrested on the day in question." Br. of Appellant at 16. But the record belies J.C-M.'s assertion. The State asked Durbin the following questions at trial:

> [State]: Officer Durbin, on—you were on duty, correct, July 30th?
> [Durbin]: Yes, ma'am.
> [State]: Did you come into contact with anybody here in the courtroom on that date?
> [Durbin]: Yes, ma'am, I did.

[State]: Can you please point that individual out and describe what they are wearing?

[Durbin]: That would be the Defendant, the black hoodie with red lettering.

RP at 39. The State then requested that the record reflect that Durbin identified the defendant as the person he had contacted on July 31, 2010. Durbin later testified, "I saw *the Defendant* throw a large object, I didn't know what it was, in behind a fire hydrant," and that after retrieving the knife, he "placed *the Defendant* into handcuffs, and placed him under arrest." RP at 41, 45-46 (emphasis added). Additionally, after indicating that he placed the "the defendant" under arrest, Durbin testified that "[w]hile searching him I smelled the odor of intoxicants," and Durbin explained that the odor of intoxicants were coming from the defendant's breath. RP at 46. This is sufficient evidence identifying J.C-M. as the person Durbin claimed committed the charged offenses. Accordingly, J.C-M.'s contention with the sufficiency of evidence regarding his identification at trial is without merit.

Next, J.C-M. argues that sufficient evidence did not support his adjudication for unlawful possession of a dangerous weapon because the State failed to present any evidence that he, with intent to conceal, furtively carried a dangerous weapon. We disagree. The fact that J.C-M. threw a double bladed knife immediately after being contacted by a law enforcement officer is sufficient circumstantial evidence from which any reasonable fact finder could infer that he had furtively carried a dangerous weapon with intent to conceal. Accordingly, we hold that sufficient

No. 42106-2-II

evidence supports J.C-M.'s juvenile adjudications and thus we affirm.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

BJORGEN, J.

We concur:

HUNT, J.

JOHANSON, A.C.J.

11