# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71032-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| MARK MATTHEW MOE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 20, 2015 |
| | ) | |

LAU, J. — Mark Moe challenges his conviction for possession of a controlled substance—heroin. He contends the trial court improperly denied his motion to suppress the drug evidence and ineffective assistance of trial counsel. Because (1) the trial court properly denied Moe's motion to suppress the evidence, (2) substantial evidence supports the factual findings and the findings support the conclusions of law, and (3) Moe fails to establish deficient performance by trial counsel, we affirm his judgment and sentence.

## FACTS

The main facts are undisputed. On February 8, 2013, Officers William Koonce and Zachariah Oleson were patrolling a mobile home park in Lynnwood, Washington. The officers were familiar with the park and arrested several individuals there in the

past. Officer Koonce testified that one particular trailer had "a lot of criminal activity associated with it." Report of Proceedings (May 9, 2013) (RP) at 4. Officer Koonce explained that patrol officers usually contact anyone near that trailer. The officers noticed three people working on a car parked in the trailer's driveway. They parked their vehicle and walked towards the group. Officer Koonce thought he recognized Mark Moe. Officer Koonce testified that Moe made "some fairly suspicious movements" as they approached. RP at 5. He stated that Moe turned his face away, pulled up the hood of his sweatshirt, and went underneath the car. Officer Koonce suspected that Moe was trying to conceal his identity. After some small talk with the other two people, Moe reappeared from under the car. Officer Koonce recognized Moe as a person he arrested several times in the past.

Officer Koonce said, "Hi, Mark," and Moe "looked nervous." RP at 8. Moe denied he was hiding when Officer Koonce asked Moe why he was hiding. Officer Koonce learned within the past month that Moe had an arrest warrant for failing to check in with the Department of Corrections (DOC). Officer Koonce described his exchange with Moe regarding the warrant:

> Well, he initially, like I said, I think [he] denied that he was, A, trying to conceal his identity from me, and B, that he had warrants. And then I said, "Well, I don't think you'd be hiding from me if you knew you didn't have warrants." Then I said, "Look, you either know if you're checking in with DOC or you're not," . . . .
> . . . He said at the time that, "Well, I might have a warrant. I don't know."

RP at 10. Based on Moe's behavior and his admission that he "might" have a warrant, Officer Oleson placed Moe in handcuffs while Officer Koonce checked on Moe's warrant status. Within three to four minutes, Officer Koonce confirmed that Moe had a valid felony warrant from the DOC. In a search incident to Moe's arrest, Officer Oleson

discovered a small amount of heroin in Moe's pocket and hypodermic needles in Moe's sock.

Moe was charged with possession of a controlled substance. He moved to suppress the evidence as the fruit of an unlawful search and seizure. Moe argued that Officer Koonce seized him without a reasonable, articulable suspicion required by Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The trial court denied the motion, concluding that Officer Koonce had reasonable suspicion to detain Moe. Moe was found guilty following a bench trial on stipulated evidence. The trial court imposed an agreed sentence of three to six months of residential chemical dependency treatment followed by twenty-four months of community custody. Moe appeals.

## ANALYSIS

### Standard of Review

We review a trial court's order following a motion to suppress evidence to determine if substantial evidence supports the trial court's factual findings. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review the trial court's legal conclusions de novo. State v. Carneh, 153 Wn.2d 274, 281, 103 P.3d 743 (2004).

Whether policed have seized a person is a mixed question of law and fact. State v. Armenta, 134 Wn.2d 1, 9, 948 P.2d 1280 (1997). What the police said and did and what the defendant said and did are questions of fact. State v. Bailey, 154 Wn. App. 295, 299, 224 P.3d 852 (2010). What legal consequences flow from those facts is a question of law. State v. Lee, 147 Wn. App. 912, 916, 199 P.3d 445 (2008). Whether a warrantless seizure or Terry stop passes constitutional muster is a question of law we review de novo. State v. Rankin, 151 Wn.2d 689, 694, 92 P.3d 202 (2004).

-3-

## Substantial Evidence Supports the Trial Court's Factual Findings

Moe challenges the trial court's Finding of Fact 1g, which provides:

> Koonce asked the defendant why he was hiding from him and whether or not he had a warrant. The defendant initially denied that he had a warrant and then stated that he wasn't sure if he had warrant. Koonce told the defendant that he should know if he had a warrant as he would know if he was checking in with DOC or he wasn't. The defendant hung his head and then stated maybe. While the defendant said he did not know if a warrant was out, he did not deny he was failing to report to DOC.

Moe claims this finding

> does not reflect the proper order of Koonce's accusations and Moe's denials, it leaves out Moe's denial that he was hiding, it leaves out Koonce's accusation that Moe would not be hiding unless he had a warrant, and it can be read to suggest Moe admitted he might have a warrant prior to being pressed on the issue by Koonce.

Br. of Appellant at 9 n.5.

Substantial evidence supports the trial court's finding of fact 1(g). "Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." Hill, 123 Wn.2d at 644. The trial court's finding of fact 1(g) and chronology of events is supported by Officer Koonce's testimony discussed above. Even assuming the trial court may have omitted portions of Officer Koonce's testimony, under the substantial evidence standard, we consider only whether the record indicates a sufficient quantity of evidence for the facts the trial court elected to include in its findings. Hill, 123 Wn.2d at 644. We do not analyze whether there were facts in the record that the trial court should have included. Here, finding of fact 1(g) is amply supported by Officer Koonce's uncontroverted testimony.

Moe also assigns error to factual findings and legal conclusions discussed in the trial court's oral ruling. These findings and conclusions have no final or binding effect. See Ferree v. Doric Co., 62 Wn.2d 561, 566-67, 383 P.2d 900 (1963) ("It must be remembered that a trial judge's oral decision is no more than a verbal expression of his informal opinion at that time. It is necessarily subject to further study and consideration, and may be altered, modified, or completely abandoned. It has no final or binding effect, unless formally incorporated into the findings, conclusions, and judgment."); See also State v. Skuza, 156 Wn. App. 886, 898, 235 P.3d 842 (2010) ("To the extent its oral rulings conflict with its written order, a written order controls over any apparent inconsistency with the court's earlier oral ruling.")

### Moe was Seized When Officers Placed Him in Handcuffs

Moe challenges the trial court's conclusion of law 4(e) that Officers Koonce and Oleson had reasonable suspicion to detain him. Moe assigns error to the trial court's conclusion of law 4(e), which states that the combination of (1) Koonce's knowledge of Moe's warrant, (2) the area's history of criminal activity, (3) Moe's nervous demeanor, and (4) Moe's admission that he might have a warrant "created reasonable suspicion and allowed the police to detain the defendant for the several minutes required to confirm the warrant." Conclusion of Law 4(e). Moe also assigns error to the trial court's conclusion that the controlled substance is admissible because the officers searched his person incident to a valid detention and arrest. Moe argues that the court erred by assuming that he was seized when he was placed in handcuffs. According to Moe, "the seizure occurred earlier." Br. of Appellant at 8. Specifically, Moe contends he was seized when Officer Koonce stated, "Look, you either know you're checking in with DOC

-5-

or you don't." RP at 8. Because Moe's admission that he might have a warrant occurred after this seizure, Moe argues the officers lacked reasonable suspicion for the detention and that, therefore, the subsequent admission, arrest, and search were fruits of an unlawful seizure. State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) ("As a general rule, warrantless searches and seizures are per se unreasonable."); State v. Brooks, 3 Wn. App. 769, 774, 479 P.2d 544 (1970) ("The fruits of a search cannot be used to justify making it.").

We conclude that Moe was seized when Officer Koonce placed him in handcuffs, not when Officer Koonce made the "checking in with DOC" comment to Moe quoted above. Both the federal and our state constitutions "prevent unreasonable searches and seizures without probable cause." Houser, 95 Wn.2d at 148. "The relevant inquiry for the court in deciding whether a person has been seized is whether a reasonable person would have felt free to leave or otherwise decline the officer's requests and terminate the encounter." State v. Thorn, 129 Wn.2d 347, 352, 917 P.2d 108 (1996) overruled on other grounds by State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003). "[A] police officer's conduct in engaging a defendant in conversation in a public place and asking for identification does not, alone, raise the encounter to an investigative detention." Armenta, 134 Wn.2d at 11; see also State v. Nettles, 70 Wn. App. 706, 710, 855 P.2d 699 (1993) ("no seizure occurs when a police officer merely asks an individual whether he or she will answer questions or when the officer makes some further request that falls short of immobilizing the individual."). Factors that suggest a harmless social contact has escalated to a seizure include "the threatening presence of several officers, the display of a weapon, touching the defendant, and

-6-

commanding language or tone of voice." State v. Knox, 86 Wn. App. 831, 839, 939

P.2d 710 (1997), overruled on other grounds by O'Neill, 148 Wn.2d at 571. In other

words, absent physical force or restraint, there must be some meaningful "show of

authority [such] that a reasonable person would have believed he or she was not free to

leave." State v. Young, 135 Wn.2d 498, 511, 957 P.2d 681 (1998).

Here, the record shows that Officer Koonce's interaction with Moe prior to his

physical detention amounted to a permissible social contact, not a seizure. The officers

did not create a threatening presence. Officers Koonce and Oleson parked their car 30

to 40 feet away from the driveway where Moe was standing. The car was unmarked,

and the officers did not activate the lights. The officers were dressed in street clothes,

and Officer Koonce testified that the individuals standing in the driveway were all "fairly

familiar" with himself and Officer Oleson due to their regular interactions with this

particular community. Officer Koonce did not use a demanding tone, nor did he give

any orders or commands. He recognized Moe from previous interactions they had in

the past and greeted him by his first name. Officer Koonce described his interactions

with Moe as cordial and respectful:

> Mr. Moe and I are pretty I'd say respectful of each other. We have been in the
> past. I've been very disappointed that he's gone to using heroin. I had arrested
> him, I don't know, three or four – three times I think recently and we talked about
> his heroin use. I kind of shrugged my shoulders and said, "we keep arresting you
> and you keep having heroin on you. You've got to get off this stuff." . . .
>     . . . .
>     . . . We're usually very cordial with each other.

RP at 12–13. Officer Koonce asked Moe why he was hiding and if he might have a

warrant, but this questioning does not amount to a seizure. Armenta, 134 Wn.2d at 11;

Nettles, 70 Wn. App. at 710. Officer Koonce did not use "'language or tone of voice

indicating that compliance with [his] request might be compelled.'" Young, 135 Wn.2d at 512 (quoting United States v. Mendenhall, 446 U.S. 544, 554–55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)).

In support of his argument that he was seized prior to being placed in handcuffs, Moe relies on State v. Barnes, 96 Wn. App. 217, 978 P.2d 1131 (1999). In Barnes, a police officer spotted Barnes, who he had arrested before, and asked him about an outstanding warrant based on information the officer had received within the previous two weeks. Barnes, 96 Wn. App. at 219. Barnes denied that he had a warrant. The officer asked if Barnes "'would be willing to stick around while I check on it.'" Barnes, 96 Wn. App. at 219. Barnes testified that he asked the officer if he could leave and that the officer responded, "No." Barnes, 96 Wn. App. at 220. The officer told Barnes that he was going to pat him down for weapons because Barnes had been moving his hands in his pockets. Barnes, 96 Wn. App. at 220. Barnes resisted the search and struggled. The officer eventually discovered crack cocaine in Barnes's pockets and arrested Barnes. Barnes, Wn. App. at 220. The court concluded that the officer's request that Barnes "stick around" while he checked on the status of the warrant was a coercive request constituting a seizure:

> We consider whether the language used in initiating the contact is coercive or permissive. "Wait right here" is coercive and constitutes a seizure. [State v.] Ellwood, 52 Wn. App. [70], 73, [757 P.2d 547 (1988)].
> Here, contact was established when Officer Moran told Mr. Barnes he thought there was a warrant outstanding on him. Officer Moran then requested that Mr. Barnes wait while he checked the warrant out. A reasonable person would not have felt free to walk away at this point . . . . [T]he ensuing interaction was a detention, not a social encounter.

<u>Barnes</u>, 96 Wn. App. at 223 (citations omitted). The seizure did not occur when the officer asked Barnes about the warrant—the seizure occurred when the officer asked Barnes to wait while he checked on the warrant.

<u>Barnes</u> is distinguishable from this case. Under <u>Barnes</u>, asking a defendant to remain in an area is a coercive request amounting to a seizure. <u>Barnes</u>, 96 Wn. App. at 223. No such request was made here. Officer Koonce never asked Moe to wait while he checked on the status of the warrant, nor did he tell Moe that he could not leave. <u>See</u> <u>Nettles</u>, 70 Wn. App. at 710 ("no seizure occurs when a police officer . . . makes some further request that falls short of immobilizing the individual."). The trial court properly concluded that Moe was seized when he was placed in handcuffs and no sooner.

### Ineffective Assistance of Counsel Claim

Moe contends his trial attorney provided ineffective assistance because he failed to argue that "Moe was seized prior to acknowledging he might have a warrant." Br. of Appellant at 15. Given our resolution discussed above, Moe fails to establish deficient performance by his trial attorney.

### CONCLUSION

For the reasons discussed above, we affirm Moe's judgment and sentence.

Cox, J.

WE CONCUR: