[No. 9590-8-III.   Division Three.   February 8, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. ELLA SISTRUNK, *Appellant*.

*Michael Kinkley,* for appellant.

*Philip Borst, Prosecuting Attorney,* and *Ronald Shepherd, Deputy,* for respondent.

SHIELDS, J.—Ella Sistrunk was found guilty of possession of heroin. She appeals; we reverse.

At 10 p.m. on May 9, 1988, Deputy Jerry Lane noticed a car parked in the Telford Rest Area off State Route 2. The

hood of the vehicle was raised. As Deputy Lane approached the vehicle, two individuals sat up in the front seat. The deputy asked the driver if he had car problems. The driver indicated there were none. Ms. Sistrunk, the owner of and a passenger in the car, indicated they initially had a problem with the radiator, but that there was no current problem. Neither occupant of the car requested help from the deputy. Deputy Lane flashed his light into the interior of the car and noticed cans in the backseat. There were approximately 39 cans, some of which were beer cans, some of which were soda cans. The cans were open and lying on their sides. Several of the cans were squashed. Some were covered with sand and weeds. Deputy Lane advised the driver and Ms. Sistrunk of the open container law, RCW 46.61.519. The driver informed Deputy Lane that he and Ms. Sistrunk had been collecting the cans along the roadway for recycling purposes. Both the driver and Ms. Sistrunk told the deputy they had not been drinking. Deputy Lane did not smell intoxicants or observe any other indication of drinking. Deputy Lane requested identification from the driver. At that point, the driver became hostile, accusing Deputy Lane of racial harassment. Deputy Lane returned to his patrol car and requested assistance. While waiting for assistance, the driver exited the vehicle. Deputy Lane asked the driver to return to his car; the driver complied. Upon the arrival of trooper Ed Snyder, the driver was taken to Trooper Snyder's patrol car, and Ms. Sistrunk was taken to Deputy Lane's patrol car. Both defendants were read their *Miranda* rights. Deputy Lane then began searching the vehicle for intoxicants. All of the beer cans which were visible were in the backseat of the car; no beer cans were visible in the front seat of the car. Deputy Lane ascertained that all the beer cans were empty. He then proceeded to make a general search of the rest of the car for intoxicants. He entered the area of the front seat. Under the cushion of the driver's seat he found a used syringe. He then returned to his patrol car where Ms. Sistrunk was seated in the back and confronted her with the syringe. He

asked for her permission to search the car, and informed her that if she refused, he would have the car impounded and would attempt to obtain a search warrant for the car. Ms. Sistrunk signed the consent to search form. A further search underneath the cushion on the front seat revealed a second syringe, a knife, and a small quantity of a brownish substance. When confronted with these facts, Ms. Sistrunk admitted the substance was heroin.

A CrR 3.5/3.6 suppression hearing was held. The trial court denied Ms. Sistrunk's motion to suppress the evidence, and held the deputy had probable cause to search the car upon seeing the open alcohol containers. The court further ruled the deputy could search the car in any area readily accessible to the passengers, and that upon discovery of the used syringe, the deputy obtained the consent necessary to authorize the search which led to the seizure of the heroin. Ms. Sistrunk moved for reconsideration. Her motion was denied. Ms. Sistrunk was found guilty on stipulated facts without trial.

The State concedes that Deputy Lane could not have made a custodial arrest of Ms. Sistrunk for violating the open container statute, even if he had found alcohol in one of the cans. *State v. Hehman,* 90 Wn.2d 45, 47, 578 P.2d 527 (1978). The State also concedes if the custodial arrest was improper, any search incident to arrest was also improper. *Hehman,* at 50. The State further concedes although the deputy could enter the vehicle to search the cans for alcohol pursuant to the "open view" exception to the warrant rule, the deputy could not expand his search for open containers beyond the rear seat area where he had initially observed the beer cans. *State v. Legas,* 20 Wn. App. 535, 581 P.2d 172 (1978). The State contends, however, first, that because of the circumstances confronting him, the deputy was justified in conducting a protective search for weapons for his own safety, citing *State v. Kennedy,* 107 Wn.2d 1, 12, 726 P.2d 445 (1986); second, the protective search for weapons extended to the driver's seat area; and third, while in the front seat area of the car, the

deputy inadvertently discovered a used syringe in "plain view" which he immediately recognized as contraband. Finally, the State contends that after being presented with this properly obtained evidence, Ms. Sistrunk consented to the additional search of her car.

A law enforcement officer may enter a vehicle and seize contraband under the "open view" exception to the warrant rule. *Kennedy*, at 10; *State v. Seagull*, 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981). However, the object viewed must also be immediately apparent as evidence for a criminal prosecution. "An object in open plain view may be seized only where it is readily apparent that the object is contraband or evidence." 3 W. LaFave, *Search and Seizure* § 7.5(b), at 129 (2d ed. 1987) (quoting *State v. Meichel*, 290 So. 2d 878 (La. 1974)). The term "immediately apparent" has been interpreted by the Supreme Court in *Texas v. Brown*, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983) to mean "requiring probable cause for seizure in the ordinary case . . .". *See also* 3 W. LaFave, at 130.

Here, Deputy Lane saw the cans, advised the occupants of the car about the open container law, and heard their explanation. He could see the cans were dirty, squashed and lying on their sides with no apparent wetness in the surrounding area. The condition of the cans was wholly consistent with the explanation given by the driver and Ms. Sistrunk: they had picked up the cans for recycling purposes. Further, he had no other indication the occupants had been drinking. Thus, it was not immediately apparent he had seizable evidence before him. Even assuming he could have entered the back of the car for the purpose of examining the cans, upon examination they contained no alcohol. The used syringe under the driver's seat, as the State has conceded, was not in plain view. Under these circumstances, the deputy could not expand the scope of his initial search of the cans into a general exploratory search. *State v. Legas, supra.*

A law enforcement officer may conduct a limited search for weapons pursuant to a *Terry* stop; however, the

law enforcement officer must first have a reasonable and articulable suspicion of a substantial possibility that a crime has occurred or is about to occur. *Kennedy,* at 6. The circumstances facing Deputy Lane when he approached the car were these: (1) the two occupants of the car sat up in the front seat; (2) the hood of the car was raised; and (3) the deputy spotted cans in the backseat area, only some of which had ever contained alcohol. In *State v. Larson,* 93 Wn.2d 638, 611 P.2d 771 (1980), the court held circumstances which suggest nothing more than a possible traffic offense do not give rise to a reasonable and articulable suspicion that the occupants of a vehicle were engaged or had engaged in criminal conduct. *See also State v. DeArman,* 54 Wn. App. 621, 774 P.2d 1247 (1989). Assuming the deputy in the present case was justified in conducting a *Terry* stop, any limited search for weapons pursuant to that stop would have to be premised upon a reasonable suspicion that the suspect is armed and dangerous. *Kennedy,* at 11–13; *State v. Williams,* 102 Wn.2d 733, 738–39, 689 P.2d 1065 (1984); *State v. Perez,* 41 Wn. App. 481, 485, 704 P.2d 625 (1985). Although Deputy Lane testified he feared for his safety after the driver became hostile, the record also discloses when the driver exited the car, he returned to it at Deputy Lane's request. Any "fear" the deputy experienced was minimal since at no point was the driver or Ms. Sistrunk frisked for a weapon by Deputy Lane. Further, the backup law enforcement officer, Trooper Snyder, testified he perceived no threat or harm. Finally, Deputy Lane admitted he was not looking for a weapon when he searched the front area of the car. The State argues that since the deputy could have searched the front seat of the car for weapons, the search should be validated. The State relies on dicta found in a footnote in *State v. McIntosh,* 42 Wn. App. 579, 584 n.1, 712 P.2d 323, *review denied,* 105 Wn.2d 1015 (1986), in which the court cites 1 W. LaFave & J. Israel, *Criminal Procedure* § 3.8, at 297 (1984) for the proposition that a law enforcement officer's conduct should be judged in terms of what was done rather than what the

law enforcement officer may have called it at the time. However, *McIntosh* referred to incidents when law enforcement officers tell a defendant he is under arrest, but do not have probable cause to make such an arrest. In those circumstances, if the law enforcement officer's conduct itself does not exceed the scope of a *Terry* stop, and the law enforcement officer would otherwise have been justified in making an investigatory stop, even though called an "arrest" by the law enforcement officer, the limited stop and search conducted was upheld. In *McIntosh,* the law enforcement officer saw what he thought was a weapon in the car. On that basis the court determined the officer was justified in conducting a search for weapons. Here, Deputy Lane made no such observation and was not justified in conducting a search for weapons at the time of the incident. Nor can he now justify his intrusion into the front seat of the car by claiming he was "in fear" if he never conducted a pat–down search at the scene. *See Larson,* at 642 n.1.

Because the used syringe was found pursuant to an illegal search, Ms. Sistrunk's subsequent consent to a further search is tainted and deemed involuntary because it was obtained by the exploitation of a prior illegality. *State v. Jensen,* 44 Wn. App. 485, 489, 723 P.2d 443, *review denied,* 107 Wn.2d 1012 (1986). The evidence and Ms. Sistrunk's admission should have been suppressed.

Ms. Sistrunk's conviction is reversed and the charges dismissed, as is the court's order to repay attorney fees and costs.

MUNSON, C.J., and GREEN, J., concur.