[No. 14278-3-II. Division Two. December 17, 1992.]

THE STATE OF WASHINGTON, *Appellant*, v. MARCELO SOTO-GARCIA, *Respondent*.

*C.C. Bridgewater, Prosecuting Attorney,* and *Douglas S. Boole, Chief Criminal Deputy,* for appellant.

*Edward J. Putka* and *Putka, Styve & Mottet,* for respondent (appointed counsel for appeal).

ALEXANDER, J. — The State of Washington appeals the Cowlitz County Superior Court's order suppressing evidence seized from the person of Marcelo Soto-Garcia. It contends that the trial court erred in concluding that Soto-Garcia was illegally seized when he was approached by a Kelso police officer and asked "if he had any cocaine on his person" and "if he could search him." We affirm.

On April 25, 1990, at approximately 11 p.m., Kelso Police Officer Kevin Tate came into contact with Marcelo Soto-Garcia in an area of Kelso the police officer referred to as "little Tijuana". Tate searched Soto-Garcia, found cocaine on his person and, consequently, placed Soto-Garcia under arrest. Soto-Garcia was eventually charged with possession of cocaine.

Soto-Garcia moved to suppress the evidence found on his person. After a hearing on his motion, the trial court made the following findings of fact:

1. That on April 25, 1990, Kelso Police Officer Kevin Tate was on routine patrol in the 400 block of Pine Street in Kelso, an area known for cocaine trafficking.

2. That at approximately 11:30 p.m. Officer Tate observed Marcelo Soto-Garcia walking out of an alley. When Soto-Garcia observed Officer Tate, he quickly looked the other way.

3. That Officer Tate pulled his car to the side of the road and Soto-Garcia voluntarily walked over to Officer Tate. Officer Tate did not turn on his overhead lights or order Soto-Garcia to come to him.

4. That Officer Tate asked Soto-Garcia where he was coming from and where he was going to. Soto-Garcia answered these questions appropriately.

5. That Officer Tate asked Soto-Garcia what his name was and Soto-Garcia voluntarily produced a driver's license. Officer Tate ran an identification check on Soto-Garcia in Soto-Garcia's presence without walking away from Soto-Garcia.

6. That Officer Tate then asked Soto-Garcia if he had any cocaine on his person. Soto-Garcia responded that he did not.

7. That Officer Tate then asked Soto-Garcia if he could search him. Soto-Garcia responded, "Sure, go ahead."

8. That Officer Tate then reached into Soto-Garcia's shirt pocket and found cocaine.

From these findings of fact, the trial court concluded:

1. That there was no seizure of the person within the meaning of the Fourth Amendment when Officer Tate approached Soto-Garcia and began to speak with him.

2. That the State has shown that Soto-Garcia freely and voluntarily gave consent to search his person, however, the request to search transformed the consensual conversation into a seizure of Soto-Garcia. Officer Tate did not have reasonable, articulable suspicion to detain Soto-Garcia pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

In its oral opinion, the trial court elaborated somewhat on its conclusions of law when it said:

I don't think there's anything wrong stopping a person and chatting . . . .. But when you start asking them, 'Have you been buying drugs?' and 'Can I search you?' we're getting into the Terry situation . . . .. This is a [T]erry stop situation, not a Terry stop.

The trial court suppressed the evidence seized from Soto-Garcia and dismissed the State's case. The State appeals the suppression order.

The State concedes that there was no basis for a lawful seizure of Soto-Garcia prior to the discovery of cocaine on his person. Rather, it contends that no seizure took place until after the consensual search and that, therefore, the evidence should not have been suppressed. Thus, the principal issue we must decide is whether the trial court was correct in concluding that Soto-Garcia was "seized" by Officer Tate before Tate removed the cocaine from Soto-Garcia's person.

■■ "A person is 'seized' within the meaning of the Fourth Amendment[1] only when, by means of physical force or a show of authority, his freedom of movement is restrained." *State v. Stroud*, 30 Wn. App. 392, 394-95, 634 P.2d 316 (1981), *review denied*, 96 Wn.2d 1025 (1982) (citing

---

[1]The parties do not contend that article 1, section 7 of the Washington Constitution should be construed independently based upon the factors set out in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Therefore, our analysis is limited to an interpretation of the United States Constitution. *See, e.g., Clark v. Pacificorp*, 118 Wn.2d 167, 172, 822 P.2d 162 (1991).

*United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, 100 S. Ct. 1870 (1980)). What constitutes a "seizure" under the Fourth Amendment is a question of fact. Recently, in *Florida v. Bostick*, ___ U.S. ___, 115 L. Ed. 2d 389, 111 S. Ct. 2382, 2389 (1991), the United States Supreme Court recited the test for determining if a seizure has occurred. It said:

> We adhere to the rule that, in order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus.

Not every encounter between a policeman and a citizen amounts to a seizure. There is, for example, "nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *Terry v. Ohio*, 392 U.S. 1, 34, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In *State v. Stroud, supra*, this court expressed a similar view when we said:

> [C]haracterizing every street encounter between a citizen and the police as a "seizure," while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement of the criminal laws. "Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. . . ."

*Stroud*, 30 Wn. App. at 395 (quoting *United States v. Mendenhall*, 446 U.S. at 554).

The fact that a police officer is in uniform and armed, without more, does not convert an encounter into a seizure requiring some level of objective justification. *State v. Belanger*, 36 Wn. App. 818, 677 P.2d 781 (1984). A police officer has not seized an individual merely by approaching him in a public place and asking him questions, if a reasonable person would have felt free to leave. *State v. Aranguren*, 42 Wn.

App. 452, 455, 711 P.2d 1096 (1985) (citing *State v. Belanger*, *supra*). The " 'reasonable person' standard does not depend upon the subjective perceptions of the suspect." *State v. Whitaker*, 58 Wn. App. 851, 854, 795 P.2d 182 (1990).

Applying these concepts to the facts of this case, we hold that the trial court correctly concluded that Soto-Garcia was seized at the time the police officer asked him if he had cocaine on his person and if he could search him. Considering all of the circumstances surrounding the encounter between Tate and Soto-Garcia, the evidence was sufficient for the trial court to conclude that a reasonable person would not have felt free to decline the police officer's requests that he provide information regarding his activities and submit to a search. The atmosphere created by Tate's progressive intrusion into Soto-Garcia's privacy was of such a nature that a reasonable person would not believe that he or she was free to end the encounter.

The trial court's findings, as well as the record, reveal that Soto-Garcia had done nothing before being confronted by Tate which would suggest that he had committed any criminal act. Soto-Garcia was merely walking on the streets of Kelso in the late evening, albeit in an area apparently known for cocaine trafficking, when Tate observed him. For reasons known only to the officer, Tate confronted Soto-Garcia and began questioning him. After Soto-Garcia answered Tate's questions "appropriately", Tate decided to run an "identification check". While Soto-Garcia apparently produced his identification voluntarily in response to Tate asking him his name, there is no evidence that suggests that he consented to the identification check. Although the check revealed no outstanding warrants for Soto-Garcia, Tate apparently remained curious, and he asked Soto-Garcia if he had any cocaine on his person. We agree with the trial judge that at this point, Soto-Garcia was seized.

As noted above, the State has not suggested that it had any basis for seizing Soto-Garcia. This is certainly understandable because there simply was no basis for an arrest, or a so-called *Terry* stop. *See Terry v. Ohio, supra*. In a factually

similar case, *State v. Rodriguez*, 32 Wn. App. 758, 761-62, 650 P.2d 225 (1982), this court held that:

> base assertions . . . that the defendant met an undefined "drug courier profile," the observation of the defendant on the telephone, and defendant's nervous appearance are simply not enough to establish probable cause for arrest or a reasonable and articulable suspicion that the defendant was engaged in criminal activity. [*See also*] *Reid v. Georgia*, 448 U.S. 438, 65 L. Ed. 2d 890, 100 S. Ct. 2752 (1980).

Here, there was even less justification for the seizure than there was in *Rodriguez*. The fact that Soto-Garcia looked away when Tate approached him certainly did not provide probable cause for an arrest. Neither can it be said that this conduct provided a well-founded suspicion of wrongdoing. *See State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1984).

Having concluded that Soto-Garcia was unlawfully seized before he was searched, the next question becomes this: Does Soto-Garcia's free and voluntary consent to be searched, after the unlawful seizure was effected, obviate what would otherwise be an illegal search?[2]

■ The standard governing this issue was articulated in *Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963):

> We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. *Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.*"

(Italics ours.)

In *Rodriguez*, we interpreted *Wong Sun* to mean that evidence obtained as a result of a consensual search following an illegal seizure need not be suppressed so long as the search

---

[2]During argument before this court, the deputy prosecuting attorney conceded that if the defendant was illegally seized, any evidence obtained in a subsequent search of him was inadmissible, notwithstanding the defendant's free and voluntary consent to that search. Despite that concession, we have examined the issue.

was authorized by a free and voluntary consent "untainted by the illegal seizure." *See Rodriguez*, 32 Wn. App. at 762. *Rodriguez* differs somewhat from the present case because there the trial court did not make a finding that the consent to search was freely and voluntarily made. Consequently, it remanded for such a determination. *Rodriguez*, 32 Wn. App. at 763. Thus, the question of whether a free and voluntary consent to search automatically vitiates the taint of a prior illegal seizure was not at issue and was not addressed. That issue is directly before us here.

A consent to search obtained through exploitation of a prior illegality may be invalid even if voluntarily given. *See Taylor v. Alabama*, 457 U.S. 687, 690, 731, 73 L. Ed. 2d 314, 102 S. Ct. 2664 (1982); *Wong Sun v. United States, supra*; *State v. Byers*, 88 Wn.2d 1, 7-8, 559 P.2d 1334 (1977), *overruled in part in State v. Williams*, 102 Wn.2d 733, 689 P.2d 1065 (1984); *State v. Tijerina*, 61 Wn. App. 626, 630, 811 P.2d 241 (1991); *State v. Sistrunk*, 57 Wn. App. 210, 216, 787 P.2d 937 (1990); *State v. Gonzales*, 46 Wn. App. 388, 397-99, 731 P.2d 1101 (1986); *State v. Jensen*, 44 Wn. App. 485, 489-90, 723 P.2d 443, *review denied*, 107 Wn.2d 1012 (1986).

Several factors need to be considered in determining whether a consent to search is tainted by the prior illegality:

(1) temporal proximity of the illegality and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of *Miranda* warnings.

*See Taylor*, 457 U.S. at 690; *Gonzales*, 46 Wn. App. at 398. One factor, alone, is generally not dispositive. *See, e.g., Jensen*, 44 Wn. App. at 490 (temporal proximity, alone, is not dispositive).

In *State v. Gonzales, supra*, a defendant who was stopped for a traffic infraction was arrested on burglary charges after he disclaimed any connection to property clearly visible in his car. Because the arrest was made before the police verified that a burglary had, in fact, occurred, the court held that the arrest was not based on probable cause and, thus,

was illegal. After the illegal arrest, the defendant voluntarily consented to a search of his home. Thus, at issue was whether the consent was tainted by the illegal arrest. In concluding that it was not, the court noted (1) Gonzales volunteered his consent rather than being asked for it, (2) Gonzales was told that he need not consent, and (3) the police misconduct in prematurely arresting Gonzales was not flagrant. *See generally Gonzales*, 46 Wn. App. at 398.

In contrast to *Gonzales*, Soto-Garcia was not told that he could withhold consent to having his license checked and to being searched. Additionally, the police misconduct was more intrusive than it was in *Gonzales*. In *Gonzales*, there were reasonable grounds to suspect that the defendant had committed a traffic infraction, whereas here there was no evidence that Soto-Garcia was engaged in any criminal activity.

In *State v. Jensen, supra*, a defendant's consent to search his vehicle was deemed valid, notwithstanding a prior illegal search of that vehicle, where the defendant, who had been legally arrested for driving with a suspended license, was (1) afforded an opportunity to make a telephone call, (2) given his *Miranda* rights, and (3) advised that he could withhold consent to the subsequent search. *Jensen*, 44 Wn. App. at 490-91. Being advised that he could withhold consent was viewed as a substantial intervening circumstance. *Jensen*, 44 Wn. App. at 490-91. Unlike the situation in *Jensen*, Soto-Garcia was not advised that he could withhold consent, nor was he given any *Miranda* warnings prior to being searched.

This case is more akin to *State v. Sistrunk, supra*. There, an illegal search of an automobile led to the discovery of a used syringe. After locating the syringe, the officer confronted the defendant with it, asked for permission to continue searching the vehicle and advised her that a warrant would be obtained if she refused to consent. *Sistrunk*, 57 Wn. App. at 213. Because the syringe was found pursuant to an illegal search, and was used to obtain the defendant's consent to continue the search, the court held that consent

was obtained by exploitation of the prior illegality. *Sistrunk*, 57 Wn. App. at 216.

Applying the principles we glean from the above, we conclude that Soto-Garcia's consent to the search was obtained through exploitation of his prior illegal seizure. As we have noted, Soto-Garcia was stopped at night in the city of Kelso at a time when there was no reason to suspect that he was engaged in criminal activity. After he was confronted by the police officer he was immediately searched without having been afforded the benefit of *Miranda* warnings or advice that he could withhold his consent to being searched. Under these circumstances, the evidence obtained as a result of that search was properly suppressed.

Affirmed.

MORGAN, A.C.J., and SEINFELD, J., concur.