[Nos. 37573-7-II; 38226-1-II;  Division Two.  March 2, 2010.]
39362-0-II.

THE STATE OF WASHINGTON, *Respondent*, v. KEVIN JOSEPH
SMITH, *Appellant*.

*In the Matter of the Personal Restraint of* KEVIN JOSEPH
SMITH, *Petitioner*.

*Kevin J. Smith*, pro se.

*Eric M. Fong* (*Rovang Fong & Associates*) and *Jennifer J. Sweigert* (of *Nielsen Broman & Koch PLLC*), for appellant/petitioner.

*Russell D. Hauge, Prosecuting Attorney*, and *Jeremy A. Morris, Deputy*, for respondent.

¶1 ARMSTRONG, J. — An officer searched Kevin Joseph Smith's wallet and discovered methamphetamine. The State charged Smith with unlawful possession of a controlled substance, and Smith failed to appear for trial. In two separate cases, juries convicted Smith of unlawful possession of a controlled substance and bail jumping. In consolidated appeals, Smith argues (1) he was unlawfully seized at the time the police searched his wallet; (2) the trial court erred by allowing the State to refile the bail jumping charge as a separate case; and (3) his untimely arraignment on the bail jumping charge violated his right to speedy trial. In a statement of additional grounds, Smith asserts that the trial court violated various rules of criminal procedure regarding setting his second trial, failing to determine probable cause after his mistrial, and allowing judges other than the trial judge to process his case. Finally, Smith contends that the prosecutor impeded his investigation and his counsel ineffectively represented him.[1] Finding no reversible error, we affirm.

---

[1] Smith has also filed a personal restraint petition (PRP) in which he restates several issues from his direct appeal. We have consolidated the appeals from his two trials and the PRP and discuss all issues in this opinion.

## FACTS

¶2 On July 13, 2007, officers from the Department of Corrections and Detective Floyd May visited the Chieftain Motel in Bremerton. After arresting one client with an outstanding warrant, they decided to check on another client, Christina Ohnemus, who had a room in the same motel. Kevin Joseph Smith and Ron De'Bose were in Ohnemus's room, and the officers asked the men to leave while they briefly searched the room. Smith walked outside, but De'Bose chose to remain.

¶3 While Smith was standing outside the room, Detective May approached and asked his name. Detective May then stepped back a few feet to check for warrants on his hand-held radio. The officer found no outstanding warrants, but the physical description associated with Smith's name stated his eye color was hazel. The detective observed Smith's eyes were blue. Detective May testified that it is common for people with warrants to give a false name, so he asked if Smith had any identification with him. Smith handed the detective a check cashing card that described Smith's eyes as blue. Due to the continued discrepancy, Detective May asked if Smith had any other identification. While Smith was holding his wallet open, the detective asked if he could look in the wallet and Smith handed it to him.

¶4 Detective May looked through Smith's wallet and found several cards with different names. After arresting Smith for identity theft, Detective May searched Smith's wallet and found a small plastic bag containing methamphetamine. The State charged Smith with unlawful possession of methamphetamine. At trial, Smith moved to suppress the evidence found in his wallet. The trial court denied his motion, and a jury found him guilty.

## ANALYSIS

¶5 Smith assigns error to the trial court's denial of his motion to suppress the methamphetamine found in his

wallet. Smith challenges four of the trial court's findings of fact and two of the court's conclusions of law. When reviewing a motion to suppress, we review challenged findings of fact for substantial supporting evidence and challenged conclusions of law de novo. *See State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003); *State v. Eisfeldt*, 163 Wn.2d 628, 634, 185 P.3d 580 (2008). "Substantial evidence" is evidence sufficient to persuade a rational person that the finding is true. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

¶6 Smith does not argue that the challenged findings of fact are unsupported by substantial evidence. Rather, he focuses on the trial court's conclusions of law: (1) there was no improper contact between Detective May and Smith and (2) Smith's consent to search was valid.

¶7 Consent is one of the narrow exceptions to the Washington State Constitution's prohibition against warrantless searches. *See* WASH. CONST. art. I, § 7; *Eisfeldt*, 163 Wn.2d at 635; *State v. Hendrickson*, 129 Wn.2d 61, 71, 917 P.2d 563 (1996). For consent to be valid, a person must consent freely and voluntarily. *O'Neill*, 148 Wn.2d at 588. An illegal seizure may invalidate voluntary consent. *See State v. Armenta*, 134 Wn.2d 1, 16-17, 948 P.2d 1280 (1997). A person is "seized" when his freedom of movement is restrained by physical force or a show of authority, and a reasonable person would not feel free to leave or otherwise decline an officer's request and terminate the encounter. *O'Neill*, 148 Wn.2d at 574. The standard is objective. *O'Neill*, 148 Wn.2d at 574.

¶8 Smith argues he was seized when the officers asked him to leave the motel room. He relies on cases where a driver or passenger was seized upon being asked to exit a vehicle. But the facts here are significantly different from those in the cases Smith cites. Smith's companion chose to remain in the room, strongly suggesting that the officers did not require Smith to leave. Moreover, the officers did not instruct Smith to remain in the area outside the room. Smith has not shown that his freedom of movement was

restrained at that point; he was not seized. *See O'Neill*, 148 Wn.2d at 574.

¶9 Smith next argues he was seized when Detective May began questioning him in the presence of several officers bearing weapons. At the time of questioning, Detective May's gun was visible, there were two officers in the motel room, and another officer stood approximately six feet away with an AR-15 rifle slung over his back. The " 'threatening presence of several officers' " or the " 'display of a weapon by an officer' " may convert a casual encounter between a police officer and a citizen into a seizure. *State v. Young*, 135 Wn.2d 498, 512, 957 P.2d 681 (1998) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554-55, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980)). But the fact that an officer is armed, without more, does not convert an encounter into a seizure. *State v. Soto-Garcia*, 68 Wn. App. 20, 24, 841 P.2d 1271 (1992), *abrogated in part by State v. Thorn*, 129 Wn.2d 347, 350, 917 P.2d 108 (1996). Smith does not argue that the officers' conduct was threatening. He simply argues that their presence was threatening because some were visibly armed. These circumstances, without more, did not convert the casual encounter between Detective May and Smith into a seizure.

¶10 Smith next argues he was seized when Detective May retained his identification card. An officer's request for identification, without more, is not a seizure. *State v. Ellwood*, 52 Wn. App. 70, 73, 757 P.2d 547 (1988). If an officer removes a suspect's identification or property from the suspect's presence, then the suspect is seized. *See State v. Hansen*, 99 Wn. App. 575, 578-79, 994 P.2d 855 (2000). Once Detective May requested identification, he remained within two to three feet of Smith while holding Smith's check cashing card. Smith was not seized because Detective May did not remove Smith's identification or property from his presence. *See Hansen*, 99 Wn. App. at 579.

¶11 Finally, Smith argues this case is similar to *Soto-Garcia*, 68 Wn. App. 20. In that case, an officer asked Soto-Garcia if he had cocaine. Soto-Garcia said no but

consented to a search. The officer discovered cocaine in his shirt pocket. *Soto-Garcia*, 68 Wn. App. at 22. We held that Soto-Garcia was seized when the officer requested permission to search, reasoning that the "atmosphere created by [the officer's] progressive intrusion into Soto-Garcia's privacy was of such a nature that a reasonable person would not believe that he or she was free to end the encounter." *Soto-Garcia*, 68 Wn. App. at 25. In *State v. Harrington*, 167 Wn.2d 656, 222 P.3d 92 (2009), the Washington State Supreme Court recently discussed *Soto-Garcia* and also held that an officer's "progressive intrusion" into a defendant's privacy resulted in a seizure.

¶12 The *Harrington* court summarized *Soto-Garcia*, describing the independent elements that amounted to a seizure as "[the officer's] inquiry about Soto-Garcia's identification, warrant check, direct question about drug possession, and request to search [Soto-Garcia]—all of which, combined, formed a seizure." *Harrington*, 167 Wn.2d at 669. The *Harrington* court compared *Soto-Garcia* to Harrington's case and held that Harrington was also seized by an officer's progressive intrusion into his privacy:

> [Officer] Reiber initiated contact with Harrington on a dark street. He asked questions about Harrington's activities and travel that evening and found Harrington's answers suspicious. A second officer arrived at the scene and stood nearby. Reiber asked Harrington to remove his hands from his pockets to control Harrington's actions. Then Reiber asked to frisk, without any "specific and articulable facts" that would create an objectively reasonable belief that Harrington was "armed and presently dangerous." The facts in both *Soto-Garcia* and this case create an atmosphere of police intrusion, culminating in a request to frisk.

*Harrington*, 167 Wn.2d at 669 (citations omitted) (internal quotation marks omitted) (quoting *State v. Collins*, 121 Wn.2d 168, 173, 847 P.2d 919 (1993)).

¶13 The circumstances supporting a seizure in *Soto-Garcia* and *Harrington* are not present here. In *Soto-Garcia*, we emphasized that the officer asked a direct

question about drug possession. *Soto-Garcia*, 68 Wn. App. at 25. The *Harrington* court reasoned that the officer asked Harrington to remove his hands from his pockets "to control Harrington's actions." *Harrington*, 167 Wn.2d at 669. In both cases, the progressive intrusion into the defendants' privacy culminated in a request to frisk. The *Harrington* court emphasized that "[r]equesting to frisk is inconsistent with a mere social contact" and held that "[w]hen Reiber requested a frisk, the officers' series of actions matured into a progressive intrusion substantial enough to seize Harrington." *Harrington*, 167 Wn.2d at 669-70. In contrast, Detective May did not question Smith about illegal activity, attempt to control his actions, or request to frisk him. The detective simply asked for identification and then asked to look through Smith's wallet, which Smith was holding open at the time.

¶14 For these reasons, Smith was not seized before consenting to a search of his wallet. The trial court correctly concluded that Detective May did not improperly contact Smith and that Smith validly consented to the search.

¶15 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PENOYAR, A.C.J., and BRIDGEWATER, J., concur.

Review denied at 169 Wn.2d 1013 (2010).