IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 32294-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SAMUEL BLACK FOSTER, JR., | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Samuel Foster was charged and convicted of unlawful possession of a controlled substance, methamphetamine. Prior to conviction, Mr. Foster filed a motion to suppress the evidence which was found on his person. The court denied the motion, concluding that the officer lawfully seized Mr. Foster based upon (1) concerns for officer safety and also (2) articulable suspicion of criminal activity. We determine that Mr. Foster was lawfully seized for officer safety only, but that law enforcement's decision to keep him handcuffed indefinitely instead of checking for weapons turned an otherwise lawful seizure into an unlawful one. Because of how Mr. Foster's consent to search was obtained, we hold that his motion to suppress should have been granted. We therefore reverse the lower court's order denying Mr. Foster's motion

to suppress.

FACTS

On October 7, 2012, Officer Brenda Anderson was patrolling an area of Olympia, Washington, known to have a high number of burglaries and bicycle thefts. Todd Adams flagged down Officer Anderson. Mr. Adams explained to Officer Anderson that he had been the victim of a residential burglary the day before and had fought with the suspect before the suspect ran from the garage. Mr. Adams further explained that his neighbor was also a victim on that same day and a tent was among the items stolen from the neighbor's garage. No bicycles were reported stolen from either house.

Mr. Adams showed Officer Anderson a picture taken by the neighbor earlier that morning. The neighbor was walking on a nearby trail and came upon a group of three people. The neighbor immediately noticed that a man in this group was carrying the stolen tent. The neighbor took a picture of the group and sent it to Mr. Adams. Mr. Adams recognized the man with the tent as the same person Mr. Adams came in contact with during the burglary of his home.

While viewing the photograph, Mr. Adams pointed out to Officer Anderson that a man standing across the street, Mr. Foster, was one of the men in the photograph. The photograph did not show a clear image of Mr. Foster's face. However, Officer Anderson

2

identified Mr. Foster as the same subject in the picture because his clothing matched the clothing worn in the photograph taken earlier that day.

In an effort to gain more information about the stolen tent, Officer Anderson crossed the street to speak with Mr. Foster. Mr. Foster was sitting on one bicycle and holding another, facing away from Officer Anderson and toward the trailhead. Officer Anderson told Mr. Foster that she wanted to talk to him. He turned and saw Officer Anderson. When Officer Anderson approached Mr. Foster, he was handling something in his sweatshirt pocket. Concerned for her safety, Officer Anderson asked Mr. Foster to take his hand out of his pocket. He did not. Officer Anderson grabbed Mr. Foster's hand and placed him in handcuffs as a safety precaution. She then noticed that one of the two bicycles had its serial number obscured.

Sergeant Matt Renschler arrived to assist as Mr. Foster was being handcuffed. He recognized Mr. Foster from previous contacts and knew his prior criminal history included property crimes and controlled substance abuse violations. Officer Anderson briefly informed Sergeant Renschler about Mr. Foster's association with a recent burglary suspect, and her investigation into that. She also mentioned that one of the bicycles had an obscured serial number, and thought that perhaps it was stolen. Officer Anderson did not check Mr. Foster for weapons, nor did she inform Sergeant Renschler that she had

3

handcuffed Mr. Foster for officer safety concerns. At this time, both victims of the prior day's burglaries approached Officer Anderson, and she left Mr. Foster to speak with them and also to determine whether either bicycle matched a description of any stolen bicycle.

Sergeant Renschler began a casual discussion with Mr. Foster. Mr. Foster remained in handcuffs. After a period of time, the casual discussion turned to questions concerning the bikes and drugs. The sergeant explained:

> We were talking about the bikes, and knowing his history, knowing the history that I'm aware of . . . although it wasn't with me personally, I knew that he was known for controlled substances violation arrests, property crime arrests. I asked him if he was going to have any narcotics on his person, and he said no. So then I asked if he would be willing for me to go ahead and check, and he said "Go ahead."

Report of Proceedings at 42-43. During the search, Sergeant Renschler found a small bag of methamphetamine inside a pack of cigarettes in Mr. Foster's pocket.

Mr. Foster was charged with unlawful possession of a controlled substance—methamphetamine. He moved to suppress the evidence found in the search. He contended that Officer Anderson's stop was an unlawful seizure, which tainted the consent to search and the evidence found as a result of the search. The trial court denied the motion to suppress. In its oral ruling, the court determined that a seizure had occurred at or just prior to Officer Anderson handcuffing Mr. Foster, and that the seizure was lawful because of officer safety concerns. In its written findings and conclusions, the

4

court added an additional basis for the seizure, that the officers had a reasonable suspicion that Mr. Foster was engaged in criminal activity, i.e., theft of the bicycles.

A bench trial was held, and Mr. Foster was convicted of the crime charged. Mr. Foster appeals. He contends that the trial court erred by failing to suppress the evidence discovered as a result of an unlawful seizure and search.

## ANALYSIS

"When reviewing the denial of a suppression motion, an appellate court determines whether substantial evidence supports the challenged findings of fact and whether the findings support the conclusions of law." *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Evidence is substantial if it is enough "'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). Conclusions of law relating to the suppression of evidence are reviewed de novo. *Id.*

Under the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington Constitution, warrantless searches and seizures are per se unreasonable. *Garvin*, 166 Wn.2d at 249. Evidence obtained in violation of these constitutional provisions must be suppressed, and evidence obtained as a result of a subsequent search must also be suppressed as the fruit of the poisonous tree. *State v.*

*Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986) (citing *Wong Sun v. United States*, 371 U.S. 471, 487-88, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963)). However, evidence will not be excluded if the seizure and subsequent search fall into one or more of the narrowly drawn exceptions to the warrant requirement. *Garvin*, 166 Wn.2d at 249-50. The State has the burden to show by clear and convincing evidence that an exception applies. *Id.* at 250.

Under an exception to the warrant rule, a police officer can conduct a *Terry*[1] investigative stop. *Id.* The *Terry* stop exception allows officers to briefly seize a person if specific and articulable facts, in light of the officer's training and experience, give rise to a reasonable suspicion that the person is involved in criminal activity. *State v. Glover*, 116 Wn.2d 509, 514, 806 P.2d 760 (1991) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). In evaluating the lawfulness of the *Terry* stop, this court inquires whether the temporary seizure was justified at its inception, and whether the stop was reasonably related in scope to the circumstances which justified the initial interference. *State v. Williams*, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984).

A *Terry* stop must be reasonable under the circumstances. *State v. Doughty*, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). The reasonableness of the officer's actions is viewed in light of the facts the officer knew at the time of the stop. *Kennedy*, 107 Wn.2d at 6. A

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

court may consider factors such as the officer's training and experience, the location of the stop, and the conduct of the person detained. *State v. Pressley*, 64 Wn. App. 591, 596, 825 P.2d 749 (1992). "The reasonableness of a stop is a matter or probability, not a matter of certainty." *State v. Bray*, 143 Wn. App. 148, 153, 177 P.3d 154 (2008). "[P]olice may stop a suspect and ask for identification and an explanation of his or her activities if they have a well-founded suspicion of criminal activity." *Id.*

In determining whether the scope of the stop was excessively intrusive, relevant factors include "the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time the suspect is detained." *Williams*, 102 Wn.2d at 740. Officers may frisk and handcuff a person during a *Terry* stop if the officer has a reasonable fear of danger, such as a reasonable belief that the person is armed. *State v. Mitchell*, 80 Wn. App. 143, 145-46, 906 P.2d 1013 (1995).

Officer Anderson stated at the suppression hearing that Mr. Foster was not free to leave once she raised her voice for him to remove his hand from his pocket. The trial court correctly determined that Mr. Foster was seized at or near the time he was handcuffed. Because the trial court's written conclusions provide two distinct bases for the seizure, we analyze the sufficiency of each basis separately.

7

*Reasonable Suspicion of Criminal Activity.* Officer Anderson testified about the factual bases of her decision to investigate the possible bicycle thefts. She testified that she was in a high crime area where many bicycles had been stolen. She also testified that Mr. Foster was in possession of two bicycles, and one of the bicycle's serial number was obscured. The written conclusions add two more reasons to justify the detention: Mr. Foster was photographed with a suspected thief earlier in the day, and Mr. Foster's hand was inside his pocket. Clerk's Papers at 34 (conclusion of law 3).

The first basis for the *Terry* stop is insufficient: Simply because a person is in a high crime area does not establish a reasonable, articulable suspicion that the person is engaging in criminal activity. *Doughty*, 170 Wn.2d at 62. Similarly, the second basis for the *Terry* stop is insufficient because Mr. Foster was handcuffed (and thus seized) *prior* to Officer Anderson noticing that one of the bicycle's serial number was obscured. Additionally, Mr. Foster being with a suspected burglar earlier in the day and having his hand in his pocket when approached by Officer Anderson does not support a reasonable, articulable suspicion that Mr. Foster was engaged in criminal activity. We hold that law enforcement's seizure of Mr. Foster was not legal as a *Terry* stop. Rather, we agree with the trial court's oral decision that the true reason for the seizure related to officer safety.

8

*Officer Safety.* In *City of Seattle v. Hall*, 60 Wn. App. 645, 806 P.2d 1246 (1991), the court held that when objective facts raise a reasonable suspicion in the mind of an officer that a person is armed and dangerous, and the officer is legitimately concerned about his or her safety, the officer may frisk the person for weapons; and that such a protective search may occur in the absence of an officer's reasonable, articulable suspicion that the person is engaged in criminal activity. We agree with the trial court that Officer Anderson properly placed Mr. Foster in handcuffs for her safety. A number of reasons support Officer Anderson's reasonable suspicion that Mr. Foster was armed and dangerous. First, Officer Anderson was investigating two burglaries that occurred just one day earlier, and Mr. Foster had associated that morning with the suspected burglar. Second, Officer Anderson was in a high crime area, known for bicycle thefts, and Mr. Foster had two bicycles in his possession. Third, and most important, Mr. Foster failed to remove his hand from his pocket after Officer Anderson directed him to remove his hand. Although the above three considerations do not provide a basis for a *Terry* stop, we will not second guess an officer's reasonable response when his or her safety is at issue.

Pursuant to *City of Seattle v. Hall*, Officer Anderson was entitled to handcuff Mr. Foster and frisk for weapons. But she did not. Nor did she convey to her sergeant why

Mr. Foster was handcuffed so *he* could frisk for weapons. Rather, she left Mr. Foster in her sergeant's charge, and continued investigating the prior day's burglaries and whether the bicycles in Mr. Foster's possession were reported stolen. If Mr. Foster was a suspect in the prior day's burglaries, we could find a basis for the continued seizure. If the officer had a sufficient reason to detain Mr. Foster to investigate the possible bicycle thefts, we could find a basis for his continued seizure. However, because the only legal basis to seize Mr. Foster was officer safety, we are constrained to hold that the officer's decision to forego frisking Mr. Foster amounts to continued detainment without a legal basis.

*Vitiation of Voluntary Consent.* In *State v. Soto-Garcia*, 68 Wn. App. 20, 841 P.2d 1271 (1992), the court considered under what circumstances evidence must be suppressed because of an illegal search, despite the defendant's voluntary consent to search. The court began its analysis by quoting *Wong Sun v. United States*:

> "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'"

*Soto-Garcia*, 68 Wn. App. at 26 (emphasis omitted) (quoting *Wong Sun*, 371 U.S. at 487-88).

*Soto-Garcia* reiterated a four-part test to assist in determining whether a consent to search is tainted by the prior illegality: (1) temporal proximity of the illegality and the subsequent consent, (2) the presence of significant intervening circumstances, (3) the purpose and flagrancy of the official misconduct, and (4) the giving of *Miranda*[2] warnings. *Soto-Garcia*, 68 Wn. App. at 27.

Applying the above factors, there was little time and no significant intervening circumstance between when Officer Anderson left Mr. Foster in handcuffs and when Sergeant Renschler began asking whether Mr. Foster had narcotics on his person, and whether he could search him. Moreover, Sergeant Renschler did not advise Mr. Foster that he could refuse to be searched, nor did he provide Mr. Foster with *Miranda* warnings. Although Officer Anderson's choice not to frisk Mr. Foster for weapons was not flagrant official misconduct, her failure to remove the handcuffs once she opted not to search for weapons prevented Mr. Foster from leaving. This directly led to Sergeant Renschler questioning Mr. Foster about narcotics and his request to search Mr. Foster's person. We conclude that Mr. Foster's consent to search was obtained by exploitation of his prior illegal seizure, and as a result, the evidence obtained as a result of his consent to search must nevertheless be suppressed. The trial court thus erred by denying Mr.

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

11

No. 32294-7-III
*State v. Foster*

Foster's motion to suppress. We reverse.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____     _____
Siddoway, C.J.                Fearing, J.

12