# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>   v.<br><br>McKENNA G. STEIN,<br><br>               Appellant. | No.  48629-6-II<br><br>UNPUBLISHED OPINION |

SUTTON, J. — The trial court found McKenna Gabrielle Stein guilty of possession of a controlled substance—methamphetamine after a bench trial on stipulated facts.  Stein appeals her conviction arguing that the trial court erred by denying her motion to suppress the methamphetamine police found in her vehicle because the officer's questioning of her constituted an unlawful seizure under *Terry*[1] and thus, her consent to search her vehicle was not voluntary.  The trial court properly concluded that the *Terry* stop was valid, that the officer's questioning of Stein was lawful, and that Stein voluntarily consented to the search of her vehicle.  We affirm the trial court's order denying Stein's motion to suppress the methamphetamine found in her vehicle.  Accordingly, we affirm her conviction.[2]

---

[1] *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[2] Stein also asks us to decline to award appellant costs.  Under RAP 14.2, a commissioner or clerk of this court has the ability to determine whether appellate costs should be imposed based on the appellant's ability to pay and prior determinations regarding indigency.  If the State decides to pursue costs for this appeal, a commissioner can make a determination as to whether costs should be imposed.  Accordingly, we do not need to address this issue any further.

FACTS

On November 20, 2015, the State charged Stein with one count of possession of a controlled substance—methamphetamine. Stein filed a CrR 3.6 motion to suppress the methamphetamine, which the police found after searching her car. The trial court held a suppression hearing in which Sergeant Ryan Heffernan of the Bremerton Police Department testified. After the hearing, the trial court entered the following findings of fact:

I.

That on November 11, 2015, at approximately 5:00 a.m., Sergeant Heffernan responded to a call from Officer Griesheimer that she had located a Chevy Trail Blazer, which is associated with warrant subject Ian Yarber, parked at 10th Street and High Avenue, in Bremerton, Washington; officers also had probable cause to arrest Yarber for Delivery of Heroin.

. . . .

VIII.

That Sergeant Heffernan and Officers Griesheimer and Faidley entered the residence through the front door. Sergeant Heffernan and at least one other officer had his duty gun drawn for officer safety reasons.

IX.

That Sergeant Heffernan quickly located Yarber in the hallway and took him into custody without incident. Sergeant Heffernan could see or hear the defendant in the kitchen and told her to remain there until Yarber was removed from the house. Sergeant Heffernan and Officers Griesheimer and Faidley conducted a protective sweep to ensure no one else was located inside the house.

X.

That Sergeant Heffernan did not locate anyone else in the residence, but did see a blown glass pipe and tinfoil with burn marks on it sitting out in plain view.

XI.

That the defendant came out of the kitchen and went outside with Sergeant Heffernan. He explained why the[y] were there and asked the defendant if she would speak with him about some items he saw inside the house.

XII.

That Sergeant Heffernan told the defendant that she was not under arrest. Sergeant Heffernan did not read the defendant her *Miranda*[3] warnings. The defendant was not restrained and was smoking a cigarette during their conversation. Sergeant Heffernan no longer had his gun drawn. No one else was involved in the conversation.

XIII.

That the defendant agreed to speak to Sergeant Heffernan and stated there was heroin-related paraphernalia in her vehicle. The defendant confirmed that the Chevy Trail Blazer belonged to her, and she had been driving it.

XIV.

That Sergeant Heffernan asked the defendant for permission to search her vehicle. Sergeant Heffernan did not read the defendant her *Ferrier*[4] warnings or otherwise advise her of her right to revoke her consent or limit the search. The defendant consented, and walked with Sergeant Heffernan to the vehicle.

XV.

That the defendant opened the car door, took a small bag out of her purse, and handed it to Sergeant Heffernan, stating that it contained Heroin-related items. The time from the entry into the home to search was between ten to fifteen minutes.

. . . .

XVII.

That during a more thorough search later, Sergeant Heffernan also located a small baggie containing Methamphetamine.

Clerk's Papers (CP) at 46-49. The trial court concluded that Stein was not unlawfully detained because "Sergeant Heffernan had a well-founded reasonable suspicion that the defendant was involved in criminal activity based on the drug paraphernalia that Sergeant Heffernan saw in plain view inside the residence." CP at 49. Thus, the trial court concluded that Sergeant Heffernan was performing a valid *Terry* stop at the time he briefly detained and questioned Stein outside of the

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] *State v. Ferrier*, 136 Wn.2d 103, 960 P.2d 927 (1998).

residence. The trial court also concluded that because the brief detention and questioning of Stein were lawful, Stein voluntarily consented to the search.

After the trial court denied her suppression motion, Stein agreed to a bench trial on stipulated facts. The trial court found Stein guilty on the charge of possession of a controlled substance—methamphetamine. Stein appeals.

## ANALYSIS

Stein argues that the trial court erred by concluding the officers had reasonable suspicion to support a *Terry* stop and, therefore, she was illegally seized at the time she consented to the search of her vehicle. And she argues that because she was illegally seized at the time she consented to the search of her vehicle, the consent was invalid and the search was improper. Here, the drug paraphernalia the officers saw was sufficient to support reasonable suspicion; therefore, the *Terry* stop was proper. Because the *Terry* stop was proper, *State v. Soto-Garcia* does not invalidate Stein's consent to search her vehicle. 68 Wn. App. 20, 841 P.2d 1271 (1992), *abrogated on other grounds by State v. Thorn*, 129 Wn.2d 347, 917 P.2d 108 (1996). Accordingly, we affirm the trial court's order denying Stein's motion to suppress the methamphetamine Sergeant Heffernan found in her vehicle.

## I. LEGAL PRINCIPLES

When we review de novo a trial court's findings of fact and conclusions of law following a CrR 3.6 suppression motion, we determine whether substantial evidence supports the challenged findings and whether the findings support the conclusions of law. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). Unchallenged findings of fact are verities on appeal. *State v. Lohr*, 164 Wn. App. 414, 418, 263 P.3d 1287 (2011).

Under the Fourth Amendment of the United States Constitution and article I, section 7 of the Washington State Constitution, a police officer generally cannot seize a person without a warrant supported by probable cause. *Garvin*, 166 Wn.2d at 249. A warrantless seizure is presumed unreasonable and the State has the burden of establishing that it falls within an exception to the warrant requirement. *State v. Z.U.E.*, 183 Wn.2d 610, 617, 352 P.3d 796 (2015).

## II. *TERRY* STOP

Stein argues that the trial court improperly found that the officers had reasonable suspicion because possession of drug paraphernalia is not a crime. Although Stein is correct that mere possession of drug paraphernalia is not a crime, she incorrectly asserts that possession of drug paraphernalia cannot create reasonable suspicion to support a *Terry* stop. The cases to which Stein cites explain that because possession of drug paraphernalia is not a crime, and use of drug paraphernalia is a misdemeanor, possession of drug paraphernalia cannot create probable cause for a warrantless arrest. *See State v. Rose*, 175 Wn.2d 10, 19, 282 P.3d 1087 (2012); *State v. O'Neill*, 148 Wn.2d 564, 584 n.8, 62 P.3d 489 (2003). However, the standard for probable cause is higher than the standard for reasonable suspicion. Accordingly, the cases cited by Stein do not govern whether Sergeant Heffernan had reasonable suspicion for a *Terry* stop in this case.

A *Terry* stop is an exception to the warrant requirement. *State v. Acrey*, 148 Wn.2d 738, 746, 64 P.3d 594 (2003). A valid *Terry* stop requires "that the officer had a 'reasonable suspicion' that the detained person was, or was about to be, involved in a crime." *Z.U.E.*, 183 Wn.2d at 617. Reasonable suspicion must be grounded in specific and articulable facts. *Z.U.E.*, 183 Wn.2d at 617. The facts must demonstrate more than a generalized suspicion or hunch that the person detained has committed a crime. *Z.U.E.*, 183 Wn.2d at 618.

Here, Sergeant Heffernan observed a glass pipe and burned foil in plain view while in the residence. Observation of drug paraphernalia that appeared to have been recently used constitutes specific and articulable facts that there may be unconsumed illegal drugs on the premise. Therefore, the presence of used drug paraphernalia supported a reasonable suspicion that Stein was involved in a crime such as possession of a controlled substance. Accordingly, the trial court did not err by concluding that Sergeant Heffernan's observation of used drug paraphernalia in plain view supported reasonable suspicion. Because Sergeant Heffernan had reasonable suspicion based on observing the used drug paraphernalia in plain view, the trial court properly concluded that he was conducting a valid *Terry* stop. Thus, Sergeant Heffernan's contact with Stein constituted a lawful seizure under *Terry*.

## III. CONSENT

Stein argues that the facts presented at the hearing were insufficient to prove that her consent was voluntary. Stein also argues that, under *Soto-Garcia*, her consent to search her vehicle was invalid because she had been illegally seized. Because we have determined that the *Terry* stop was valid, *Soto-Garcia* does not apply and the trial court correctly concluded that Stein validly consented to the search of her vehicle. Therefore, we hold that Stein's consent was voluntary.

A. Voluntary Consent

Consent to search is another recognized exception to the warrant requirement. *State v. Thompson*, 151 Wn.2d 793, 803, 92 P.3d 228 (2004). The State bears the burden of proving that the consent was freely and voluntarily given. *O'Neill*, 148 Wn.2d at 588. Whether consent was voluntary or the result of coercion, express or implied, is a question of fact. *O'Neill*, 148 Wn.2d at 588. Factors used to determine whether a person has voluntarily consented include whether

*Miranda* warnings were given, the individual's education and intelligence, and whether the person was advised of the right to consent. *O'Neill*, 148 Wn.2d at 588.

Here, Stein does not challenge the findings that the superior court made, but rather she argues that the facts that were established were insufficient for the State to prove that her consent was voluntary. The trial court found that, after the officers finished serving the arrest warrant, they no longer had their guns drawn. And the conversation between Sergeant Heffernan and Stein took place outside while Stein was unrestrained and smoking a cigarette. Sergeant Heffernan also informed Stein that she was not under arrest and would not be arrested. Because there was no show of force or any other express or implied threat, the evidence is sufficient to show that Stein voluntarily consented to the search of her vehicle. Accordingly, the trial court did not err by concluding that Stein's consent was voluntary.

B. Illegality

Stein also argues that *Soto-Garcia* invalidates her consent to search because of the illegality of the seizure. In *Soto-Garcia*, an officer contacted the defendant because the defendant was walking in an area known for drug activity and avoided eye contact with the officers. 68 Wn. App. at 22. The officer asked the defendant what he was doing and where he was going and the defendant answered appropriately. *Soto-Garcia*, 68 Wn. App. at 22. Then the officer ran an identification check on the defendant. *Soto-Garcia*, 68 Wn. App. at 22. After the identification check, the officer asked the defendant if he had any cocaine and the defendant stated that he did

7

not. *Soto-Garcia*, 68 Wn. App. at 22. Finally, the officer asked to search the defendant. *Soto-Garcia*, 68 Wn. App. at 22. The defendant consented and the officer found cocaine in the defendant's pocket. *Soto-Garcia*, 68 Wn. App. at 22.

On appeal, this court held that the defendant's consent was invalid because the defendant was illegally seized at the time he gave consent. We noted that the officer's "progressive intrusion" amounted to a seizure. *Soto-Garcia*, 68 Wn. App. at 25. Then we went on to state "there simply was no basis for an arrest, or a so-called *Terry* stop." *Soto-Garcia*, 68 Wn. App. at 25. Finally, we held that the defendant's "consent to the search was obtained through exploitation of his prior illegal seizure." *Soto-Garcia*, 68 Wn. App. at 29. It is clear that our holding in *Soto-Garcia* was based on the illegal nature of the seizure. 68 Wn. App. at 29. As explained above, the trial court properly concluded that Sergeant Heffernan had reasonable suspicion to conduct a *Terry* stop. Therefore, our reasoning in *Soto-Garcia* does not apply because Stein's consent was not obtained through the exploitation of an illegal seizure. Accordingly, Stein's consent was not invalidated by illegality.

Here, there was a valid *Terry* stop because Sergeant Heffernan observed drug paraphernalia in plain view which provided a reasonable suspicion to believe Stein was engaged in criminal activity. And because there was a valid basis for Sergeant Heffernan's contact, Stein's consent

was both voluntary and valid. We affirm the trial court's order denying Stein's motion to suppress the methamphetamine Sergeant Heffernan found in her vehicle. Accordingly, we affirm Stein's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
SUTTON, J.

We concur:

_____
WORSWICK, J.

_____
MAXA, A.C.J.