[No. 40970-1-I.    Division One.    January 19, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. JUAN ALMANZA-GUZMAN, *Appellant*.

---

564

*Shannon B. Marsh* and *Sharon J. Blackford* of *Washington Appellate Project*, for appellant.

*David S. McEachran, Prosecuting Attorney*, and *MacDuffie Setter* and *Laura D. Hayes, Deputies*, for respondent.

WEBSTER, J. — Juan Almanza-Guzman was at a gun show. He approached one of the tables in search of magazines for his pistol. Guzman took out the gun to show the firearms dealers the type of weapon he had. Unbeknownst to Guzman, the dealers were also United States border patrol agents. Suspecting that he was an alien without an alien firearm license, the agents went to the parking lot and stopped Guzman's vehicle while identifying themselves. Responding to their questions, Guzman admitted that he

did not have a permit to carry the weapon. He was subsequently arrested and convicted of possessing a firearm without an alien firearm license.

Guzman appeals, arguing that (1) the investigative stop was not based upon specific and articulable facts giving rise to a reasonable suspicion that he was, or was about to be, engaged in criminal activity, and (2) the record does not show that he knowingly, voluntarily, and intelligently waived his right to a jury trial. We reverse and dismiss.

## FACTS

Appellant Juan Almanza-Guzman attended a gun show in Washington. He approached a table, looking to purchase a replacement magazine for his pistol. He retrieved the pistol from under his jacket to show the gun dealers the type of weapon he had. They did not have a magazine for Guzman's pistol.

The gun dealers also happened to be off-duty United States border patrol agents Keith Olson and Bob Coleman. They observed that Guzman's pistol had not been disabled by a procedure required at the gun show's entrance. Based on their experience as border patrol agents and on their conversation with Guzman (most of which was conducted in Spanish), Olson and Coleman believed that (1) Guzman's primary language was Spanish, as indicated by his accent and choice of words, and therefore (2) Guzman was a Mexican national rather than a U.S. citizen. They also knew that Washington state rarely issues permits allowing aliens to carry weapons.

Based on these factors, Olson and Coleman concluded that Guzman was an alien carrying a weapon without a license. They waited until Guzman left the crowded display area, then stopped him in the parking lot as he was starting to drive away, identifying themselves as border patrol agents. They first asked Guzman whether he was a U.S. citizen or national, whereupon Guzman showed them his

residential alien card. Olson and Coleman then asked Guzman whether he had an alien firearm license, and Guzman admitted that he did not. He was subsequently arrested.

The trial court denied Guzman's motion to suppress and convicted him on stipulated facts of possessing a firearm without an alien firearm license, in violation of RCW 9.41.170. He received a sentence of 60 days' confinement and was remanded to the custody of the Immigration and Naturalization Service for immediate deportation. This appeal follows.

## DISCUSSION
### Investigative Stop

■ Both the federal and state constitutions protect against unreasonable searches and seizures. U.S. CONST. amend. IV; WASH. CONST. art. I, § 7. Once an officer "restrains the individual's freedom to walk away," the person has been seized. *State v. Nettles*, 70 Wn. App. 706, 709-10, 855 P.2d 699 (1993). When a seizure has been effected, it may amount to a custodial arrest, an investigative stop (*Terry*[1] stop), or an arrest for some other purpose. *State v. Lund*, 70 Wn. App. 437, 444, 853 P.2d 1379 (1993).

■ No probable cause is needed for a *Terry* stop, but the seizure must be reasonable. *Lund*, 70 Wn. App. at 445. That is, the State must be able to point to " 'specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity.' " *State v. Armenta*, 134 Wn.2d 1, 10, 948 P.2d 1280 (1997) (quoting *State v. Gleason*, 70 Wn. App. 13, 17, 851 P.2d 731 (1993)). Such facts are " 'judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?' " *State v. Barber*, 118 Wn.2d 335, 343, 823 P.2d 1068 (1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). Guzman

---

[1]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

contends that the border patrol agents did not have reasonable suspicion of criminal activity when they detained him in the parking lot. We agree.

██ The trial court found that Olson and Coleman concluded that Guzman was an alien based on "their experience at the southern border with Mexican nationals, the fact that Spanish was clearly the defendant's first language, the defendant's choice of words during their conversation, and his accent." Clerk's Papers 17. However, being an alien does not, in and of itself, implicate criminal activity. Indeed, border patrol agents on roving patrol may not stop a vehicle solely on the basis of the occupant's apparent Mexican ancestry. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 885-87, 95 S. Ct. 2574, 45 L. Ed. 2d 607 (1975). "Race or color alone is not a sufficient basis for making an investigatory stop." *Barber*, 118 Wn.2d at 347 (quoting *United States v. Bautista*, 684 F.2d 1286, 1289 (9th Cir. 1982)). Thus, the fact that Guzman's primary language was Spanish or that he spoke with an accent is insufficient to justify an investigative stop.

The State argues that Olson and Coleman also knew that Washington rarely issues alien firearm licenses and Guzman was carrying a gun. But, while this may be true, it is simply not enough to suspect someone of criminal activity. Guzman was carrying a gun *at a gun show*. Certainly, a gun show is one of the least suspicious places to tote a gun. More persuasive is the argument that the gun was under his jacket and had not been disabled at the entrance. However, we find that more indications of suspicious activity are required. Neither the record nor the trial court's findings point to any other arguably suspect behavior by Guzman.

What we are left with is a man who failed to check his gun at the gun show entrance, approached a gun dealer's table, and then took out the gun to show the gun dealer the replacement part he needed. These facts alone, without anything more, are insufficient to provide a basis for rea-

sonable suspicion of criminal activity.[2] *See State v. Armenta*, 134 Wn.2d at 13 (defendants' possession of large amounts of cash was an "innocuous fact" insufficient to justify their seizure); *State v. Tijerina*, 61 Wn. App. 626, 629, 811 P.2d 241 (1991) (presence of motel-sized bars of soap in a vehicle driven by Hispanics, combined with officer's knowledge of drug activity by Hispanics in motels, were "innocuous" facts insufficient to justify investigative stop); *Brignoni-Ponce*, 422 U.S. at 884-87 (apparent Mexican ancestry alone is insufficient to justify stopping a car to question the occupant's immigration status, as large numbers of native-born and naturalized citizens have the physical characteristics identified with Mexican ancestry); *Nicacio v. INS*, 797 F.2d 700, 704 (9th Cir. 1985) (people of Hispanic-looking appearance, dressed in work clothes and traveling early in the morning are factors insufficient to provide a rational basis for stopping vehicles to search for illegal aliens).

Because we hold that the *Terry* stop was unconstitutional, we need not decide the constitutionality of Guzman's waiver of a jury trial.

We reverse and dismiss.

AGID, A.C.J., and APPELWICK, J., concur.

---

[2]For example, in *United States v. Brignoni-Ponce*, the United States Supreme Court noted that although border patrol officers on roving patrol may not effect a *Terry* stop based solely on a person's apparent Mexican ancestry, the officers may take into account any number of other factors in deciding whether there is reasonable suspicion that the vehicles contain aliens who may be illegally in the country. 422 U.S. at 885-87. Such factors include the characteristics of the area, its proximity to the border, patterns of traffic, erratic driving, and aspects of the vehicle itself. *Id.* at 884-85.