# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | |
|---|---|---|
| | ) | No. 68694-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| P.E.P., | ) | |
| | ) | |
| Appellant. | ) | FILED: September 23, 2013 |
| | ) | |

APPELWICK, J. — This appeal arises from P.E.P.'s conviction for unlawful possession of a firearm in the first degree. P.E.P. argues that the trial court should have suppressed the gun as the fruit of an unlawful seizure. We affirm.

## FACTS

The relevant facts are undisputed. Before he started his shift on September 28, 2011, Seattle Police Officer Christopher Gregorio was briefed on a drive-by shooting that happened around 6:00 p.m. on the 9100 block of Rainier Avenue South. The shooter was still at large.

Around 8:40 p.m. that night, Gregorio responded to a domestic violence (DV) call at the Lake Washington Apartments, just a block from the scene of the drive-by shooting. Gregorio was familiar with the DV suspect, Reginald Barron, having arrested him several times before, and could recognize him on sight. Gregorio drove around the back of the apartment building because Barron usually left that way to evade responding police officers.

Gregorio found two people behind the apartment building. One was sitting on the apartment steps, and the other was hunched over along the back fence, partially hidden in some sticker bushes. Gregorio could not tell if the two people were there together or not. At first, Gregorio thought the man in the bushes was Barron, so he spotlighted him. The man looked back, not fully turning, and Gregorio immediately realized the man was not Barron. Gregorio would later identify the man as P.E.P.

Gregorio thought it was "suspicious and odd" that P.E.P. was hidden in the bushes, so he asked him, "Hey, what are you doing?" P.E.P. did not say anything, but quickly turned to face Gregorio with a "deer-in-the-headlights look," and "flicked" a dark object behind him into the bushes. The object made a "big clink" when it hit the metal fence behind the bushes. Gregorio immediately suspected the object was a gun because of P.E.P.'s actions, and because he recognized the sound as a gun hitting a fence, having heard the sound before.

Remembering the recent nearby shooting and not knowing whether the second man might be armed, too, Gregorio pointed his gun at P.E.P., and ordered both men to get down on the ground. Gregorio then called for backup, which arrived in less than a minute. Once backup arrived, Gregorio handcuffed P.E.P. and searched the area by the fence where P.E.P. had thrown something, quickly finding a small handgun. With the confirmation that P.E.P. had been in possession of a handgun and Gregorio's estimation that P.E.P. was underage, Gregorio arrested P.E.P. for unlawful possession

of a weapon.[1] After running a background check, Gregorio also learned that P.E.P. had a prior felony conviction.

The State charged P.E.P. with unlawful possession of a firearm in the first degree based on his prior conviction.[2] P.E.P. moved to suppress the gun, arguing that it was the product of an illegal seizure. The trial court denied the motion. It concluded that

> Based on Officer Gregorio's training and experience, his knowledge of the earlier shooting, his initial observations of [P.E.P.] crouched near the bushes, [P.E.P.'s] throwing of an object and the sound of the object hitting the fence being consistent with that of a gun hitting a metal fence, Officer Gregorio had reasonable and articulable suspicion to believe that [P.E.P.] was armed with a firearm.

The court found P.E.P. guilty on stipulated facts. P.E.P. timely appealed.

## DISCUSSION

P.E.P. argues that the trial court violated his rights under the Fourth Amendment and article I, section 7 of the Washington Constitution by admitting evidence obtained as a result of an unconstitutional seizure. The constitutionality of a warrantless seizure is a question of law we review de novo. State v. Gatewood, 163 Wn.2d 534, 539, 182 P.3d 426 (2008).

---

[1] Gregorio testified that it was apparent to him that P.E.P. was under 21. RCW 9.41.240 provides that a person between 18 and 21 may only possess a pistol in certain circumstances, none of which apply here. A person under 18 may also lawfully possess a firearm in certain circumstances pursuant to RCW 9.41.042, but those circumstances are not present here, either.

[2] RCW 9.41.040(1)(a) provides that "[a] person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted . . . in this state or elsewhere of any serious offense as defined in this chapter."

Generally, warrantless searches and seizures are unconstitutional. Id. A Terry stop is a well-established exception to the warrant requirement that allows police to briefly detain a person to investigate whether a crime has been committed. Terry v. Ohio, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); Gatewood, 163 Wn.2d at 539. A Terry stop is lawful if the State can point to specific and articulable facts giving rise to a reasonable suspicion that the person stopped is, or is about to be, engaged in criminal activity. State v. Kinzy, 141 Wn.2d 373, 384–85, 5 P.3d 668 (2000). Whether the officer's suspicion is reasonable is determined by the totality of the circumstances known to the officer at the inception of the stop. State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991); Gatewood, 163 Wn.2d at 539. The circumstances known to the officer are viewed objectively, and the reasonableness of his suspicion is not dependent on his subjective belief or on his ability to correctly articulate his suspicion in reference to a particular crime. State v. Mitchell, 80 Wn. App. 143, 147, 906 P.2d 1013 (1995).

P.E.P. argues that Officer Gregorio could not have formed a reasonable suspicion that he was engaged in criminal activity, because carrying a firearm is not a crime. He contends that Gregorio's knowledge after the stop of his status as a minor and of his felony conviction cannot validate the seizure post hoc. We agree. The trial court finding was erroneous unless P.E.P. was unlawfully armed with a firearm at the time he was seized. What Officer Gregorio learned after the seizure cannot provide a basis to validate the seizure. However, this is not dispositive of whether Officer Gregorio had a reasonable suspicion to believe P.E.P. unlawfully possessed a firearm.

P.E.P.'s reliance on State v. Almanza-Guzman, 94 Wn. App. 563, 565, 972 P.2d 468 (1999), and Gatewood is misplaced.

In Almanza-Guzman, border patrol agents stopped the defendant because (1) they suspected he was a Mexican national; and (2) they doubted that he had a license for his gun. Id. at 564. The court held mere gun possession—particularly at a gun show—and suspicion of alien status insufficient to provide a basis for a reasonable suspicion of criminal activity. Id. at 567–68.

The circumstances similarly failed to support a reasonable suspicion of criminal activity in Gatewood. There, the only facts known to the officers when they stopped the defendant were that (1) his eyes widened on seeing their passing patrol car; (2) he twisted his body to the side as if to hide something; (3) he walked away from the bus shelter after the officers passed; and (4) he jaywalked. Id. at 540. This was insufficient for a Terry stop. Id. While the defendant, like P.E.P., also threw a gun into some bushes, he did so after the officers told him to stop, so it did not contribute to the basis for his initial seizure. See id. at 538, 540.

P.E.P. does not challenge the trial court's conclusion of law that Gregorio's testimony was credible. Here, based on that testimony, the totality of circumstances known to Gregorio at the time he initially seized P.E.P. included the following: (1) there had recently been a shooting nearby, and the shooter was still at large; (2) he found P.E.P. behind an apartment complex hunched over, hiding in the sticker bushes; (3) there was a second individual nearby, potentially armed; (4) when Gregorio spotlighted P.E.P. and asked him a simple question, P.E.P. spun around with a startled expression and threw something away into the bushes; and (5) Gregorio recognized the resulting

5

sound as a gun hitting a metal fence. Unlike the defendant in Gatewood, P.E.P.'s suspicious disposal of a gun into the bushes was not subsequent to his seizure; it triggered it.

We hold that Officer Gregorio had a reasonable suspicion to believe that P.E.P. was unlawfully armed with a firearm and conducted a lawful Terry stop of P.E.P. Accordingly, the trial court properly denied P.E.P.'s motion to suppress.

We affirm.

Appelwick, J.

WE CONCUR:

Spearman, A.C.J.          Cox, J.

6